NEW-YORK,
May, 1814.

JACKSON
v.
HOGEBOOM.

JACKSON, *ex dem.* VAN RENSSELAER, *against* HOGEBOOM.

THIS was an action of ejectment tried at the *Columbia* circuit, 3d *October*, 1812, before Mr. Justice *Van Ness.*

The lessor of the plaintiff deduced a title under the *Claverack* patent, granted to *John Van Rensselaer*, including the premises in question. The defendant gave in evidence a *lease* from *John Van Rensselaer* to *Johannes Hogeboom*, dated 8th *February*, 1763, and a second lease between the same parties the 8th of *November*, 1763, of all those certain parcels of land, &c. describing them, to have and to hold to the lessee, his heirs and assigns forever, upon condition that the said *J. Hogeboom*, his heirs, &c. render and pay, as a yearly rent for the premises granted, the yearly *tenth* part of all the produce thereof, to the lessor and his heirs, &c. on the first day of *February* yearly, and every year, during the continuance of the grant, &c. &c. The lessor covenanted to pay the rents or tenths, so reserved, and perform certain covenants. The lease contained no covenant for a re-entry of the lessor, in case of non-payment of the rent or tenths reserved.

*Johannes Hogeboom*, by will, dated 19th *March*, 1784, devised to his son *Lawrence*, all his claim and possession to all the lands possessed by him. *Lawrence* died about ten years ago, and the defendant, his son, succeeded to the possession of his father. A map, made about the time of the lease, was produced. A person who surveyed the land at the request of the defendant, testified that all the courses on the map were contained in the lease, except one, and if that line be omitted, on the construction contended for by the defendant, a *considerable part of the land of Johannes Hogeboom* would be excluded from the lease.

A witness testified that he saw the *map* which was made by *Philip Schuyler*, about 50 years ago, being present at the survey by him, and from which he made the map. The lease was given about the time, and the lands have always been held according to the survey. The witness had always understood that one line on the map was omitted in the lease. He saw a

rizing an ejectment, where the lessor has a right to re-enter, in case a sufficient *distress* is not to be found on the premises applied, it must appear that there was no sufficient distress at the time the declaration in ejectment was served.

A *lease in fee,* reserving rent, was made in 1763, and a map of the survey of the land on which the lease was founded, was also made at the same time, and 8 or 10 years afterwards it was discovered and known to the lessor, that one of the courses of the survey was omitted in the lease; but the possessions had been taken and held according to the survey for more than 50 years; it was held that after such a lapse of time, and the acquiescence of the lessor, the possession taken according to the survey could not be disturbed; and *it seems,* that a court of equity, in such case, would rectify the mistake in the lease, so as to make it conform to the survey. Where a lease contains no clause of re-entry for non-payment of rent, the landlord cannot maintain ejectment under the statute. Admitting the statute autho-

survey, about 12 or 15 years after *Schuyler's* survey, made by *James Van Rensselaer*, who said that the course mentioned was not in the lease; and then the witness went and procured the map and showed it to *Van Rensselaer*, who examined it, and said it was right, and that it must be run according to the map. The witness stated that all the land held by him was included in the map, but if the description in the lease was pursued, about 100 acres of his farm would be excluded; that he had always lived on his farm *since the year* 1763, and *the whole of the land in the map had been held as it was now held.*

It was proved that the defendant admitted he had not paid any rent since he had been in possession of the farm. There had always been sufficient distress on the land, though on the *east* side of the road there had been no property, except cattle which were occasionally pastured there; and, in *February*, there was nothing on the land on the east side of the road, on which a distress could be made. It did not appear that any rent had ever been demanded. Notice to quit was proved.

A verdict was taken for the plaintiff, subject to the opinion of the court on a case made, which was submitted to the court without argument.

*Per Curiam.* 1. The first question is, whether the defendant is to hold according to the courses and distances in the lease of the 8th of *November*, 1763, or according to the map made by *Schuyler*, cotemporaneously with the lease, *Schuyler* also having made the survey on which the lease was founded?

It seems to be admitted that there is a mistake in the lease; and it is very clear that a court of equity, after so long an acquiescence, would rectify that mistake. But it is not necessary to send the party to that court. In the case of *Jackson* v. *Duffendorf and Zoller,* (3 *Johns. Rep.* 270.) we held that a possession of 38 years was not to be disturbed, because, from a recent survey, it did not correspond with partition deeds executed 60 years before. We considered the parties, and those who claimed under them, concluded by so long an acquiescence, and that every legal presumption, and every consideration of policy, required that this evidence of right should be taken to be conclusive.

In this case, the lands have been held 51 years, according to the survey. Twelve or fifteen years after giving the lease

the mistake was discovered by one of the agents of the lessor, and on the production of the map, the agent declared that the line must be run according to the map. The agent certainly could not bind the principal, but this furnishes evidence, that in all human probability the principal was made acquainted with the discrepancy between the map and survey, and acquiesced in the land being held according to the map.

It would appear, however, that there is some land, how much is not stated, held by the defendant, without the survey; the same principle applies to that excess.

2. Has the plaintiff a right to maintain an ejectment for the rents due and unpaid under the lease of *November*, 1763?

The lease does not provide for a re-entry in case the rents remain due; but after the *habendum*, there follows a condition that the lessor, his heirs and assigns, shall pay a yearly rent of one tenth part of the produce of the lands demised. It may well be doubted whether the lessor, or his representatives, have any other remedy to be reinvested with the possession than that afforded by the common law, a demand of the rent on the land and at the day it became due.* But, admitting that the statute authorizing an ejectment, where the party has a lawful right to re-enter in case there be no sufficient distress, extends to such a lease, the evidence in this case by no means proves that there was not a sufficient distress on the premises when the declaration in ejectment was served. The want of distress must be at the time the party serves the ejectment. The testimony does not show when it was served, or that there was then a want of distress.

Judgment for the defendant.