## Van Rensselaer vs. Jewett.

Though a landlord may generally re-enter for non-payment of rent without show-
ing that there was no distress, by making a strict demand of the rent according
to the rules of the common law, yet this right may be qualified by the terms of
the lease so as to depend upon the absence of a distress at the time of the rent
becoming due.

Therefore, where a lease in fee, in addition to the *reddendum* clause and an ex-
press covenant to pay the rent, contained a *proviso*, that if at any time there
should be no sufficient distress to pay the rent in arrear, *or* if any of the cove-
nants should be broken, the landlord might re-enter ; and the landlord brought
ejectment upon a re-entry at common law, it appearing on the trial that there
was a sufficient distress; *held* that the action could not be sustained.

Where premises demised or granted, reserving rent, with a clause of re-entry, are
held in separate parcels by different persons under the lessee or grantee, the
landlord may re-enter upon and bring ejectment for any separate parcel of the
premises, against the party holding such parcel. *Per* McKissock, J.

In such a case the demand of rent where the re-entry is at the common law must
be for all that is due upon the whole premises included in the demise, and
not for the proportionate part due in respect to the defendant's parcel. *Per*
McKissock, J.

Where a grant in fee reserving rent, besides the *reddendum* clause and a covenant
to pay the annual rent on the first day of February in each year, contained a
proviso that if it should be in arrear for twenty-eight days after the day of
payment, the landlord might prosecute or distrain for the same at his option,
and a further proviso that if at any time there should not be a sufficient dis-
tress, or any of the covenants should be broken, that the landlord might re-enter,
the proper day for demanding the rent with a view to a re-entry at common law
is the twenty-eighth day after the first day of February. *Per* McKissock, J.
*Contra*, *per* Whittlesey, J. who was of opinion that the demand should be
on the first day of February.

Ejectment, tried at the Albany circuit, in October, 1844,
before Parker, Cir. J. The declaration was for a piece of
land described by specifying the adjoining owners, and which
was stated to be all the land in the possession of the defendant
in the parcel of land theretofore demised by Stephen Van Rens-
selaer deceased, to William Davis.

The plaintiff gave in evidence the counterpart of a convey-
ance in fee, by indenture, dated December 8th, 1813, from
Stephen Van Rensselaer, described as the "proprietor of the

Vol. V.*        16

manor of Rensselaerwick," to William Davis, and executed by
Davis, of a piece of land described by metes and bounds and as
containing $188\frac{3}{10}$ acres of land.    There was a *reddendum*
clause, as follows: " Yielding and paying therefor yearly and
every year during the continuance of this grant, unto the said
Stephen Van Rensselaer, his heirs or assigns, the yearly rent
of eighteen bushels and three-fourths of a bushel of good, clean,
merchantable winter wheat, four fat hens, to be delivered at
the now mansion house of the said Stephen Van Rensselaer in
the town of Watervliet, unless specially directed by the said
Stephen Van Rensselaer, his heirs, administrators or assigns to
be delivered at some other place, not more than one mile dis-·
tant from the said mansion house or the spot on which it is now
erected ; and perform one day's service with carriage and
horses ; the first payment to be made on the first day of Feb-
ruary next; and thereafter in and upon the first day of Febru-
ary in each year."    The next clause was a covenant on the
part of the grantee to pay the rent reserved, "at the days and
times and in the manner aforesaid."    After several covenants
and provisos, the instrument proceeded as follows: "Provided
always nevertheless, that if it shall so happen that the rent
above reserved, or any part thereof, shall be behind and unpaid
by and for *the space of twenty-eight days next after the said
days of payment,* that then and in every such case, it shall and
may be lawful for the said S. V. R., his heirs and assigns and
· any of them, at the option of the said S. V. R., his heirs or
assigns, at any time thereafter, either to prosecute for the recov-
ery of all rents then due, in some court of record, or in person
or by his or their servant or servants, bailiff or bailiffs,
into the whole or any part of the premises to enter and there
to distrain, &c.    And provided further, and these presents and
every thing herein contained are upon this express condition,
*that if it should at any time happen that no sufficient distress
can be found upon the premises,* to satisfy such rent due and
in arrear as aforesaid, or if either of the covenants and condi-
tions hereinbefore contained on the part of the said party of the
second part, his heirs and assigns to be performed, fulfilled

and kept, shall not be performed, fulfilled and kept, or shall be broken, that then, and in each and every such case, from thenceforth and at all times thereafter it shall and may be lawful to and for the said S. V. R. his heirs and assigns and any of them, into the whole of the said hereby granted premises, and into any and every part thereof in the name of the whole to re-enter, and the same as his and their former estate to have again, &c. and upon such entry made by the said S. V. R., his, &c. these presents and every thing herein contained shall cease, determine, and become void and of no effect."

The plaintiff also gave in evidence the last will and testament of Stephen Van Rensselaer, which took effect by the death of the testator on the 26th day of January, 1839, by which he devised to the plaintiff all his "lands, tenements, hereditaments and real estate, with the rents, issues and profits thereof, situate in the manor of Rensselaerwick, on the west side of Hudson's river," with certain exceptions.

Andrew D. Lansing, a witness for the plaintiff, testified that on the 1st day of March, 1843, at half past five o'clock in the afternoon, he was on the front steps of the mansion house mentioned in the grant, and as agent of the plaintiff demanded the payment of one year's rent due on this lease. He read from a paper the language which he said he made use of in making the demand on that occasion, as follows : "By virtue of a letter of attorney which I now hold in my hand, I do for and in the name of Stephen Van Rensselaer, [the plaintiff,] demand payment of eighteen and three-fourths bushels of good clean merchantable winter wheat, four fat hens, and one-day's service with carriage and horses, reserved in and payable by virtue of a lease made by the *late* Stephen Van Rensselaer, on the 8th day of December, 1813, the counterpart of which, made by said William Davis, I now have in hand." The witness stated that he was an agent of the plaintiff, and had been of his father, the grantor in the indenture ; that there was an office opposite the aforesaid mansion house, on the other side of the street and distant about 150 yards therefrom, adjoining which office was a store in which the wheat rents due from the tenants on the

manor were usually received ; that the defendant in this suit had paid rent only on two occasions, when he had paid in wood. The plaintiff then gave evidence tending to show that the defendant was and had been for several years in possession of the premises mentioned in the declaration, being about 100 acres of land, parcel of the premises granted to Davis, and that he held under that grant by mesne conveyances from Davis.

It appeared that the grantor had at various times sent out printed notices, desiring the tenants to pay their rents in arrear at the office. These were posted in taverns and given to individual tenants; but it did not appear that the defendant had seen or received any of them, or that any such had been issued since the rent demanded became due. The plaintiff admitted that when the demand was made there was a sufficient distress on the premises to satisfy all rent unpaid.

The defendant moved for a nonsuit on the following grounds: 1. That the demand of the rent was not made on the right day. 2. That as the defendant held in severalty a distinct portion of the premises subject to rent, only so much should have been demanded as the defendant was bound to pay for his part of the lot. 3. That the will of Stephen Van Rensselaer, senior, did not convey to the plaintiff a title to the rent in question. 4. That the place of payment had been changed pursuant to the provisions of the grant, and that the demand should have been made at the office. 6. That by the true construction of the indenture, the right to re-enter for non-payment of rent was restricted to a case in which there was no sufficient distress.

The judge nonsuited the plaintiff, who excepted.

*D. McMartin*, for the plaintiff, moved to set aside the nonsuit and for a new trial on a bill of exceptions. He argued the following points : 1. The demand was correctly made as to time. The first day of March was the twenty-eighth day after the first day of February, and the tenant had twenty-eight days within which to pay his rent in order to avoid a re-entry. (*Doe* v. *Wandlass,* 7 *T. R.* 117 ; 1 *Saund.* 287, *n.* 16 ; *Woodfall's Land. & Ten.* 2d *Lond. ed. p.* 337, 8 ; *Co. Litt.* 202, *a.*)

Van Rensselaer *v.* Jewett.

2. The demand was for the rent of a single year. This was correct, though there were other years' rent in arrear. As to these, the day of payment had passed, and no demand having been made when they became payable, there could not be a re-entry at common law. 3. The circumstance that there were several tenants on the premises out of which the rent issued, did not require or authorize the landlord to demand less than the whole year's rent. To warrant a re-entry against either tenant the whole year's rent must be demanded, as was done in this instance. 4. Rents in fee are *hereditaments.* They fall also within the denomination of *lands* and of *real estate.* (*a.*) The title to this rent therefore passed to the plaintiff under the will of S. Van Rensselaer the elder. (2 *Bl. Com.* 21, 42; 3 *Kent's Com.* 401.) 5. The demand was made at the right place. The place of payment had not been changed. 6. The fact of the existence of an adequate distress had no bearing on the case. The re-entry was sought to be maintained at the common law and not under the statute. (*Jackson* v. *Collins,* 11 *John.* 1; *Jackson* v. *Hogeboom, id.* 163, 165; *Jackson* v. *Kipp,* 3 *Wend.* 230.) No demand is necessary where there is a covenant to pay the rent. It is required only where it is claimed solely under the *reddendum* clause. (1 *Plowd.* 69.)

*R. W. Peckham,* for the defendant. 1. The demand should have been made on the first day of February, for it was on that day the rent became due. The covenant was to pay on that day and not on the twenty-eighth day thereafter. It is true that the note of Sergeant Williams in Saunders' Reports, referred to by the plaintiff's counsel, states that where the proviso is "that if the rent shall be behind and unpaid by the space of 30, or any other number of days after the day of payment, it shall be lawful for the lessor to re-enter," a demand must be made on the 30th or other last day. This clause, it will be perceived, was a limitation of the right to re-enter. In the case

(*a.*) See *Payn* v. *Beal,* (4 *Denio,* 405.)

at bar it is at the utmost only a postponement of the right to distrain, and does not at all affect the right to re-enter. But it has lately been held that the clause is entirely nugatory. (*Hill* v. *Stocking*, 6 *Hill*, 277.) The right to re-enter attached upon non-payment on the day on which, by the terms of the covenant to pay the rent, it was payable. The remedy by re-entry at common law has always been held to be a very strict proceeding. (*Jackson* v. *Harrison*, 17 *John.* 66 ; *Jackson* v. *Kipp*, 3 *Wend.* 230.) 2. By the true construction of the indenture, there was no right of re-entry, unless upon failure of a sufficient distress on the premises. The right to re-enter is matter of convention and depends upon the provision on that subject in the indenture. Consequently the parties may modify the right as they shall see fit, and the question in this case is whether they have not agreed that there shall be a re-entry only in the absence of a distress. We insist that they have so qualified it. If it were a case of doubtful construction, such an interpretation should be applied as will prevent a forfeiture. (*Fabian* v. *Winston*, *Cro. Eliz.* 209 ; *Jackson* v. *Topping*, 1 *Wend.* 388.) 3. Assignees of a reversion are entitled to take advantage of conditions in leases made by their predecessors in the title only by virtue of the statute 32 *H.* 8, *c.* 34, re-enacted in this state. (1 *R. L.* 363, §§ 1, 3.) Under this statute it is well settled that an assignee of the reversion in a part of the land demised cannot re-enter for a condition broken. (1 *Saund.* 287, *n.* 16.) Again, by the act concerning tenures, (1 *R. L.* 70, § 1,) where a freeholder shall sell a part of his lands, the alienee of the part shall be liable to a proportionate part of the services due to the chief lord. By force of this statute and by accepting the defendant as his tenant for the part of the premises held by him a new tenancy is created, and the reversion is thus severed and the condition is gone. 4. The demand was not made at the right place. The office had been substituted for the manor house pursuant to the provision in the lease, and the demand should have been made there. Besides, the day's service should have been demanded personally of the party liable to render it. (*Bac. Ab. Rent, I. pl.* 1.) The idea that no de-

Van Rensselaer *v.* Jewett.

mand is necessary where there is a covenant to pay the rent is exploded. (*Doe* v. *Wandlass*, 7 *T. R.* 117.)

*C. L. Jenkins*, in reply. The construction adopted by the plaintiff, as to the time of making the demand, is the one most favorable to the defendant. It is also the reasonable construction ; for it would be singular if a party might re-enter on the first day named, but could not distrain until the later day. A re-entry at common law may be made without an express condition in the lease, though not by the statute. (*Jackson* v. *Hogeboom*, 11 *John.* 163, 165.)

The mansion house and office were virtually the same place so far as concerns the receiving of the rent. The landlord did not want the wheat in his hall or parlor, but at his storehouse. The lease means, at the proper place on the premises connected with his mansion house.

McKissock, J. There is a unity in the condition that cannot be broken, at least by the lessee, by any assignments or subdivisions of the premises. Whoever holds a part holds that part subject to the performance of the whole condition. That which is necessary to the existence of the whole must be necessary to the existence of the parts. Each and all the holders are bound to see to it that the whole rent is paid. The plaintiff was right then in demanding the whole; and under that demand he has a right to bring actions against all the separate holders, however numerous. If this were not so, by what rule of apportionment would he be ever able to comply with the strictness of the rule that he is not to demand either a penny too much or too little. (1 *Saund.* 287, *n.* 16.) By the common law an assignee or grantee of a reversion could not enter for condition broken, except in case of lease for years. But by the 32 *H.* 8, *c.* 34, which has been re-enacted in this country, (1 *R. S.* 747, §§ 23, 25,) he may ; and under this statute it has been held that the assignee of a part of the reversion cannot re-enter, on the ground that the condition being entire cannot be apportioned by the act of the parties. (*Note to Saund. sup.*)

And there would appear to be no better reason why an entire condition should be apportioned by act of the lessee or his assignees than by the lessor.

The next inquiry is, whether the demand was made at the proper time. On the argument of this branch of the case, it appeared to be assumed, that the determination of that question depended in whole or in part on the question when a suit at law might be brought for the rent. That I apprehend is by no means the criterion; for the right to bring covenant for the rent may exist and the time for re-entry not yet have arrived. The breach of the covenant to pay could never alone work a forfeiture of the lease, nor could it determine the time of such forfeiture, unless the time named in the covenant for payment or the existence of the right of action are made the premises of the condition. A covenant may also be a condition, but that is only so where the technical words of a condition are inserted in this wise, *provided also* and the lessee *doth covenant*, &c. ( *Woodf. Land. & Ten.* 247, 248; 2 *Black.* 154, 156.) The first proviso in this lease as to the payment of the rent, in terms, limits the right to distrain to a period twenty-eight days after the day of payment before mentioned—the first day of February. Now this proviso can by no just criticism be said to make any attempt to control the time at which suit might be brought, and if it had, it would have been nugatory. (*Hill* v. *Stocking*, 6 *Hill*, 289.) But it does give the right of distress, which did not exist by the common law, as this is a rent charge; and it also determines that the right shall arise if the rent or any part of it shall remain due for twenty-eight days after the time of payment. Connected with and growing out of this right of distress comes the right of re-entry as given in the condition respecting re-entry.

The word " or," it will be perceived, is used between the different branches of the condition—" If it shall happen that there is no distress, *or* if either of the covenants or conditions shall be broken." The sentence has the same meaning as if the word *also* had been used, so that after the branch respecting distress, it had read, " also if either of the covenants and con-

ditions." The latter terms of the proviso give the right of entry whenever any of the conditions or covenants therein before contained shall be broken, while the former terms of the condition make it dependent on the occurrence of the right to distrain. It is plain therefore that the authority to distrain and the right to re-enter are coeval, or at least, that when they do both exist they arise at the same time on the same day. Stated in a separate proposition, the result of the whole matter is this : If the rent remained due and in arrear for the space of twenty-eight days after the time appointed for payment, and there was not then sufficient distress on the premises, the right of re-entry arose, and the demand was made on the right day. ( *Woodf. Land. & Ten.* 267, *ed.* 1816 ; *Clun's case*, 10 *Rep.* 129.) In this last case the rent was payable at a certain feast, *or within thirteen weeks thereafter*, and it was held not to be due or demandable until the end of the thirteen weeks. (*See also* 1 *Saund.* 287, *n.* 16 ; *Fabian* v. *Winston, Cro. Eliz.* 209 ; *Cropp* v. *Hambleton, id.* 48.) In such cases it has sometimes been the practice for greater caution to make demand both days, as was done in *Jackson* v. *Harrison,* (17 *John.* 66.)

But I am of opinion that there could be no re-entry for condition broken, in this case, if there was a sufficient distress on the premises, and that the plaintiff was bound to have shown that there was none. The courts have always been strict in their requirements to prevent forfeitures ; and accordingly in ejectment for the non-payment of rent under the statute of 4 Geo. 2, it was held that the plaintiff could not recover unless he proved that there was not sufficient distress, though the statute was silent on the point. (*Note to Saund. sup.* ; *Doe* v. *Lewis,* 1 *Burr.* 620.) The same rule has been enforced under our statute, (*Jackson* v. *Collins,* 11 *John.* 4,) and it is now incorporated into our revised statutes. (2 *R. S.* 505, § 30.) If this has been required in proceedings under these statutes, much more should it be in a case where the rigor of the common law is invoked to enforce a forfeiture, and that too, under a proviso in the grant containing almost the words in which the judicial

rule above stated has been transplanted into the statutes of this state.

We were referred on the argument to *Jackson* v. *Collins,* above mentioned, and to *Jackson* v. *Hogeboom,* (11 *John.* 163,) to show that the plaintiff might demand the rent and re-enter notwithstanding there was sufficient distress; and it was said that a demand and non-payment was evidence of the breach of the covenant to pay. But it is the breach of the condition and not the breach of the covenant to pay that gives the right of re-entry. Besides, the cases referred to only decide that in ejectment for non-payment of rent, if the party proceed under the statute he must show want of sufficient distress; while if he proceed at common law he must prove a demand. There is no intimation in either case that the estate is ever forfeited by a simple breach of the covenant to pay, or without regular demand in a common law proceeding.

The demand was not in any respect originally resorted to as a proof of the breach of the covenant to pay: that could be shown in a much more simple way; but to give some check to the destructive power of a condition broken. And it was said in connection with that purpose, in the language of the old books—a lessor cannot enter without demand, which must be on the land, for the land is the debtor and the rent cometh out of the land. (*Co. Litt.* 201, *b.*)

It is unnecessary to advert to the other questions discussed on the argument, as it already sufficiently appears that the plaintiff was rightly nonsuited.

WHITTLESEY, J. The points made on the argument all relate to the requisites of a re-entry of the non-payment of rent, and principally as to the demand for the rent. Answers to the following questions will determine the points raised: 1. Was the demand of rent made on the right day? 2. Was it made at the right place? 3. Was it made for the right sum? 4. Could there be any re-entry for non-payment of rent, since it was admitted that there was sufficient distress on the premises to satisfy the rent?

At common law great strictness and technical nicety were required to entitle the reversioner to re-enter for non-payment of rent. There must be a demand of rent—and the precise rent due—upon the precise day when it is due—at a convenient time before sunset—at the place appointed for the payment of the rent. (*Duppa* v. *Mayo,* 1 *Saund. Rep.* 287, *n.* 16.) As the law leans against forfeitures, this strictness is not re‑laxed in our own courts. (*Jackson* v. *Harrison,* 17 *John. Rep.* 66.)

When was this rent due? It was payable on the 1st of Feb‑ruary by the lease. A very common proviso in leases is that "if the rent shall be behind and unpaid for the space of twenty‑eight days after the day of payment, then it shall be lawful for the lessor to re-enter," &c. The decided cases are under such clauses; and they hold that the demand must be on the 28th day. (*See note to Saund. Rep. above cited.*) The proviso in this lease is not so: but is, "that if the rent shall be behind and unpaid for the space of 28 days, it shall be lawful for the lessor to prosecute for the recovery or to distrain." Nothing is said here about re-entry—but there is the further proviso, that if no sufficient distress can be found upon the premises to sat‑isfy the rent in arrear, or if either of the covenants or condi‑tions on the part of the lessee shall be broken, then it shall be lawful for the lessor to re-enter. The whole taken together then stands thus: The rent was due the first of February—if it was not paid on that day the covenant to pay it was broken —but the lessor could not prosecute or distrain until 28 days after the rent was due and the covenant was broken. He could re-enter for covenant broken and for non-payment of rent if there was no sufficient distress. Looking at these provisos and the effect of them, it seems to me quite clear that the demand of rent for the purpose of re-entry should have been made on the first of February. Indeed it has been held that the lessor need not wait for the expiration of the 28 days under such a pro‑viso before he can distrain, as there is no negation of his right to distrain before that time. (*Hill* v. *Stocking,* 6 *Hill,* 277.) The

same construction might be applicable to the right to prosecute for rent due. So that it may be considered at least doubtful whether the lessor was bound to wait the 28 days before suing or distraining for rent due. Is it the argument that the lessor should wait the 28 days to see if sufficient distress did not remain upon the premises to pay the rent upon the supposition that distress could not be made until after 28 days? If this is the argument, then if sufficient distress is found after 28 days are gone, there should not be a re-entry at all. And indeed it seems clear to me, under the proper construction of the further proviso, that there should be no re-entry if there was sufficient distress on the premises. The spirit of the agreement is, that if the covenant to pay the rent was broken, and there was not a sufficient distress—or if the rent was not paid, or there was not enough upon the premises out of which the party could pay himself, the lease should be forfeited and the lessor might re-enter—but if the rent was paid, or there was enough on the premises out of which the lessor could pay himself by distress, as the lessor could thus obtain the rent he should not be at liberty to forfeit the lease for its non-payment. In this case it is admitted that there was sufficient distress on the premises; and if so, there could be no re-entry on account of rent in arrear, unless because the covenant to pay rent was broken; but in my judgment the further proviso qualifies the covenant to pay rent by the clause in relation to sufficient distress so far as the breach of such covenant is to be punished by re-entry. I therefore answer the 1st and 4th questions by coming to this conclusion : as to the first, that the demand of payment of rent should have been made on the first of February, and in regard to the other that as there was sufficient distress on the premises to pay the rent due, a re-entry was not authorized for non-payment of rent; as at that time the lessor could have paid himself by distress, the remedy by distress not having then been abolished.

It is unnecessary to consider the other questions raised on the motion for a nonsuit.

Van Rensselaer *v.* Jewett.

BEARDSLEY, C. J., was of opinion that the nonsuit was correctly granted, on the ground that the existence of a sufficient distress precluded a re-entry under the peculiar provisions of the grant in this case.

New trial denied.