## DE LANCEY *against* GANONG.

The denial, orally, by a tenant for life or years, of his landlord's title, and the assertion that he owns the lands in fee, and owes no rent for them, does not work a forfeiture of the term, or authorize the landlord to maintain eject-ment for the lands demised.

*Mere words* can never work a forfeiture of an estate for life or years.

Default in the payment of the rent, where there is a covenant for its payment, and no condition in the lease providing for a reëntry in case of such default, does not work a forfeiture of the term.

The words " yielding and rendering " in a lease, import a covenant, but not a condition, unless the landlord would otherwise be without remedy in case the rent should not be paid.

EJECTMENT to recover possession of a farm in North Salem, Westchester county. The action was commenced in February, 1848. The plaintiff alleges that she was possessed on the first day of January, 1848, and that the defendant entered and ejected her on the second day of the same month. Plea not guilty.

SEL.—VOL. V.

On the trial, before Mr. Justice Barculo, in June, 1851, the plaintiff gave in evidence a lease from Stephen De Lancey to Nathaniel Delavan, dated September 8th, 1775, by which the former demised to the latter certain premises (embracing those in question), described as containing one hundred and seventy acres, for the term of ninety-nine years from the date. The clause reserving rent was as follows : " Yielding and rendering therefor the rent of five pounds current money of the province of New-York, to be paid every first day of January from the date hereof, and if not paid at the day appointed to be recovered as an action of debt." The lessor covenanted to warrant the possession of the lessee during the term ; and the lessee expressly covenanted to pay the rent and the taxes. The last sentence in the instrument is, " and the said Delavan shall set up no other title but mine."

, The plaintiff also gave in evidence assignments from the lessee, Delavan, to John Knox, dated September 3, 1778 ; from John Knox to Thomas Knox, dated May 8, 1817, and from Thomas Knox to the defendant, dated March 10, 1826. The lease and two first assignments which were endorsed on the lease were produced by the defendant pursuant to a judge's order requiring them to be so produced. The assignment to the defendant was also endorsed on the lease, and was recorded on the third day of April, 1826.

The plaintiff then gave in evidence a deed in fee from Stephen De Lancey, the lessor, to John P. De Lancey, dated January 1, 1795, and the last will and testament of John P. De Lancey, who, it was admitted, died in 1828, executed in 1823, devising certain lands to the plaintiff, both which deed and will embraced the premises in question.

The defendant produced under the said judge's order, and the plaintiff gave in evidence, sundry receipts for rent signed for and on behalf of John P. De Lancey and acknowledging payments of rent from John Knox, Thomas Knox and the defendant, and other receipts signed by an agent

of the plaintiff admitting the payment of rent by the defendant for the demised premises for several years and down to the commencement of the year 1833.

The defendant, on the cross-examination of one of the plaintiff's witnesses, proved and gave in evidence an instrument written on the same paper with the lease, under the hand and seal of Stephen De Lancey, in the following words:

" It is agreed between me, the subscriber, and John Knox of Cortlandt's Manor, that as he has paid off a bond of upwards of three hundred pounds I owed unto Benjamin Clapp, senior, that, on his paying me regularly during my life on the first day of every January the sum of six pounds ten shillings, and endeavoring to preserve all the timber on the farm except what is necessary for the use of the farm, and not selling the said farm during my life, nor giving over the possession to any person without my leave in writing, and keeping the said farm in good repair and fence; then the said John Knox and his heirs are entitled to all the privileges of the above lease granted to Captain Nathaniel Delavan. In witness my hand and seal this 25th day of February, A. D. 1788."

Samuel E. Lyon, a witness for the plaintiff, testified that he was her agent for some time commencing in the year 1842; that about a year or eighteen months after his appointment he called on the defendant, on the premises, for rent due the plaintiff; that he declined paying any rent on the premises, and said the De Lanceys had no title to the land, and claimed that he had a title paramount to theirs; that he refused to pay rent or give up possession.

E. F. De Lancey, another agent of the plaintiff, who succeeded Lyon, testified that he called on the defendant in July, 1847, and explained his character and demanded the payment of the rent in arrear. The defendant said he did not owe any rent; that the land was his. On being asked if he meant the right of soil, he said he did; that he knew no landlord or landlady about it, and that he himself was the

only person he knew in the matter. After some further conversation the defendant requested the agent to go with him to Mr. Lee, his (defendant's) counsel, which he did, and the agent was introduced to him. After the defendant and Mr. Lee had conferred together apart, they returned to the room where the agent was, when Mr. Lee said to the agent that the defendant claimed the land and would hold it until he was turned out. He declined, though inquired of, to say upon what ground the claim was based, but said that would appear at the proper time if anything was done. The agent then told defendant that he would give him time to think of the matter, till the following September. He testified that at the end of that time he called again on the defendant, who said he was of the same mind as before; that he was himself the owner of the land and did not owe any rent. The agent said he should commence an ejectment on the land, to which the defendant said that was what he wanted, as it would settle the matter. The evidence of a denial of the tenancy was taken after an objection by the defendant to its materiality, which was overruled.

The defendant moved for a nonsuit on the ground that the defendant was in possession under a valid lease which was not forfeited. The judge granted the motion and nonsuited the plaintiff, and the plaintiff excepted.

The supreme court at a general term denied the plaintiff's motion to set aside the nonsuit, and gave judgment for the defendant.

The opinion was given by Mr. Justice BARCULO. (*See* 12 *Barb.*, 120.)

*C. M. Jenkins,* for the appellant.

I. The defendant by his denial, defiance, disclaimer and adverse claim, renounced his character as tenant and put an end to the relation between the parties. (*Jackson* v. *Vincent,* 4 *Wend.,* 633 ; *Willison* v. *Watkins,* 3 *Peters' R.,* 43 :

De Lancey *against* Ganong.

*Newman* v. *Rutter,* 8 *Watts' R.,* 51, 54, 55; *Cruise's Dig.,* tit. 32, ch. 22, § 2; *Doe* v. *Frowd,* 4 *Bing.,* 557; *Bradstreet* v. *Huntington,* 5 *Peters' R.,* 401, 440; *Zeller's lessee* v. *Eckert,* 4 *Howard's R.,* 289, 296; *Doe* v. *Cooper,* 1 *Mann. & Gr.,* 135; *Rawle on Cov. for Title,* 40; *Fisher on Copyhold,* 105, 109; *Gilbert's Ten.,* 304; *Doe* v. *Ellerbrook,* 1 *Cr., Mees. & Ros.,* 137.)

II. The defendant having by his conduct and declarations intentionally induced the plaintiff to bring ejectment, is estopped from setting up a tenancy to defeat the action which he has thus invited. (*Cow. & Hill's Notes, p.* 372, 3, note 225; *Hall* v. *White,* 3 *Carr. & P.,* 136; 3 *Hawks,* 479; 5 *Monroe,* 530, 544; 2 *Esp.,* 635; 9 *Wend.,* 147; 11 *How.,* 326.)

*John H. Reynolds,* for respondent.

I. The instrument of February 25th, 1788, between Stephen De Lancey and John Knox, was a release and extinguishment of the rent from the time of the death of De Lancey.

II. The term was not forfeited by what was said by the defendant to the plaintiff's agents. (*Doe* v. *Wells,* 10 *Adolph. & Ellis,* 427; *Jackson* v. *Kiselbeack,* 10 *John.,* 336, *Jackson* v. *Vincent,* 4 *Wend.,* 633; *Jackson* v. *Collins,* 11 *John.,* 1; *Jackson* v. *Vosburgh,* 7 *John.,* 186, *and notes; Jackson* v. *Carey,* 16 *John.,* 302; *Right* v. *Darby,* 1 *Tidd,* 161; *Adams on Ejectment, p.* 125, *and notes; Cruise's Dig.,* tit. 32, ch. 36, § 2; 2 *Platt on Leases,* 494; *Bac. Abr., title Leases* (*T,* 2); *Doe* v. *Cooper,* 1 *Mann. & Gr.,* 135; *Doe* v. *Stanion,* 1 *Mees. & Wels.,* 695; *Co. Litt.,* 252 (*a*); *Preston's Shep. Touch.,* 285.)

III. The defendant is not estopped from setting up the tenancy. No estoppel *in pais* arises where the facts are equally known to both parties, and the mistake of the party claiming to have been misled is one of law.

De Lancey *against* Ganong.

DENIO, J. If any mere verbal disclaimer by a tenant for years could be held to work a forfeiture of the term, the evidence in this case would furnish a suitable instance for the application of the principle. The defendant distinctly disavowed the relation of tenant, claimed to be the absolute owner in fee of the demised premises, and put his landlord wholly at defiance; and he did this not in a single casual conversation, but repeatedly and deliberately, and after he had availed himself of legal advice. It must however be remembered that should the doctrine be established that such an estate can be forfeited by mere words, parties will be at liberty to submit to a jury evidence far less conclusive than this; and such interests in real estate, which are often of great value, will come to depend upon the uncertain memory of witnesses, and the title to valuable landed estates will be gained or lost according to the preponderance of oral testimony, or the result of a nicely balanced case. In regard to other species of property, and in respect to many personal rights, this must inevitably be the case. But the policy of the law in regard to interests in lands has been to leave as little as possible to depend upon verbal testimony. Hence no conveyance, assignment or surrender of an estate or interest in that species of property is allowed except by deed in writing, and no contract for the leasing of lands, except for a single year, and no executory contract for the sale of an interest in lands can be valid unless in writing. We must in this as in all cases give to parties whatever the law entitles them to; but when it is claimed that an estate in a term for years can be lost in consequence of mere declarations unaccompanied by any act or writing, we must before yielding to the claim ascertain satisfactorily that the law is settled as it is asserted to be.

It was a rule arising out of reasons connected with the military tenures, that if the feudal tenant denied that he held the feud of his lord, and it was proved against him, such a denial was a forfeiture. (3 *Bac. Ab.*, 466, *Phil. ed.*,

1844.) So certain forms of alienation by a tenant, and certain pleas interposed by him in courts of record, inconsistent with his actual relations to the lord, were held to work a forfeiture. (*Co. Litt.*, 251, *a ; id.*, 252, *b.*) These rules, though founded upon peculiar reasons and connected with a state of society no longer existing, and depending moreover upon an artificial course of reasoning not now in use, are still to be observed so far as they are found incorporated with our laws relating to real estate; and they cannot be discarded from any prejudice we may entertain respecting their origin.

The first inquiry therefore is whether a verbal disowning of the actual relation which the tenant sustained towards the feudal superior, or to the landlord of modern times, was ever a forfeiture of the estate of the tenant. The earlier writers generally treat of these principles in their relation to tenancies for life, but I am not aware that there is any difference in this respect between such tenancies and those for a definite term of years. In *Cruise's Digest*, they are said to stand upon the same footing. (1 *Cruise*, 266, § 40, *ed.* 1834.) Coke in his Commentary upon section 416 of Littleton's Tenures, has treated of this subject with his usual minuteness of detail, and something more than his usual system. He says that a particular tenant may forfeit his estate in two manner of ways — either *in pais* or by matter of record. Alienations *in pais* which work a forfeiture are of lands which "lie in livery," that is, of property which is transmissible by the species of conveyance to which livery of seizin is incident, " where a greater estate passeth by livery than the particular tenant may lawfully make, whereby the reversion or remainder is divested." " But (he says) a particular estate of anything which *lies in grant* cannot be forfeited by any grant in fee by deed. As if tenant for life or years of an advowson, rent, common, or of a reversion or remainder of land by deed grant the same in fee, this is no forfeiture of their estates, for that nothing

De Lancey *against* Ganong.

passes thereby but that which lawfully may pass." He then takes up the case of forfeiture by matter of record, which he says may be in three manner of ways : *First*, by alienation, which he again divides into two kinds; by fines or common recoveries by which the remainder is divested; and by the same formalities where the remainder is not divested, as in the case of rents, commons, &c. " *Secondly*, by claime; and that may be of two sorts, either express or implyed; — *express*, as if tenant for life will *in court of record* claime a fee, or if lessee for years be ousted, and he will bring an assise *ut de libero tenemento* (that is, bring an action for the recovery of a freehold estate); *implyed*, as if in a suit of right brought against him he will take upon him to join the mise upon the mere right *which none but tenant in fee simple ought to doe.* So if lessee for years doe lose in a *praecipe* and will bring a writ of error, for error in process, for this is a forfeiture. *Thirdly*, by affirming the reversion or remainder to be in a stranger; and that either actively or passively. *Actively* in five manner of ways: As first, if tenant for life pray in aid of a stranger. (This is a proceeding by a defendant in a real action, calling for the assistance of another to help him to plead because of the feebleness or imbecility of his own estate. 3 *Bl. Com.*, 300.) Secondly, if he atturne to the grant of a stranger; and there arose also a diversitie between an atturnement of record to a stranger and an atturnement *in pais, for an atturnement in pais worketh no forfeiture.* Thirdly, if a stranger bring a writ of entrie in *casu proviso*, and suppose the reversion to be in him, if the tenant for life confess this action, this is a forfeiture. Fourthly, if a tenant for life *plead* covenously to the disherison of him in the reversion, this is a forfeiture. Fifthly, if a stranger bring an action of waste against lessee for life, and he plead *nul wast fait*, this is a forfeiture, or the like. *Passively*, as if a tenant for life accept a fine of a stranger *sur conusans de droit come ceo*, &c., *for thereby he affirmes of record the reversion to be in a*

De Lancey *against* Ganong.

*stranger.*" The learned commentator afterwards says that the same rules apply to tenant for years, tenant by statute merchant, statute staple or *elegit*. (252, *a.*)

It will be seen that in this elaborate statement of the different methods by which an inferior estate may be forfeited there is no mention made of a deliberate denial by language of the estate of the reversioner; and by the careful manner in which the author has arranged and classified them, it seems certain that he could not have considered a mere declaration out of court to be capable of producing any such effect. True, a tenant may forfeit his estate by an alienation *in pais*, but it must be of a corporeal hereditament, and the alienation must be by feoffment with livery of seizin, the most solemn and public method of conveyance known to the ancient law, and which requires for its consummation the delivery of corporeal possession of the land. If the estate be of an incorporeal nature which passes by grant, no forfeiture arises upon an alienation in fee by a tenant for life or years; and the reason is that a feoffment with livery by the particular tenant is a disseizin which divests and displaces the remainder or reversion, and puts the parties holding those estates to their action; whereas a grant has no such operation, but only passes " what lawfully may pass," and injures no one. Then again estates may be forfeited by the particular tenant claiming a fee or a greater estate than he has; but all the instances are of solemn proceedings in courts of record; as if tenant for life claims a fee in court, or tenant for years being ousted brings an action which only lies in favor of a freeholder; or if being sued in a real action he joins issue upon the mere right instead of vouching the owner of the inheritance. Then again the estate may be lost by affirming the reversion or remainder to be in a stranger; but there is not the remotest indication that a parol declaration to that effect will work a forfeiture, all the examples being recognitions of record of the right of a stranger to the title;— and when he comes to

the case of attornment he is careful to state that to work a forfeiture it must be by record, " for an atturnement *in pais* worketh no forfeiture."

*Bacon's Abridgment* contains a similar statement of the acts which will forfeit an inferior estate; after which it is added: " but as by the feudal law the vassal was to be convicted of this denial (of the lord's right to the reversion), so in our law those acts which plainly amount to a denial must be done in a court of record to make them amount to a forfeiture; for such act of denial appearing on record is equivalent and equally conclusive as a conviction upon solemn trial; and all other denials that might be used by great lords for trepanning their tenants and for a pretence to seize their estates by our law were rejected, for such convictions might be made by such great lords where there was no just cause; but the denial of the tenure upon record could never be counterfeit or be abused to any injustice; and therefore this notorious and solemn act of the tenant was retained as a just cause of forfeiture by our law." (*Vol. 3, p.* 466.)

Without spending more time upon the earlier authorities, it will be sufficient to refer to the opinion of Chancellor KENT, who recognizes the doctrine with the limitations which have been quoted as good law at the present day. (4 *Kent's Com.*, 82, 106, 4 *ed.*) There is nothing in the exigencies of modern affairs calling for an increase of the rigor of these provisions of law. The idea of disloyalty attached to such acts as we have been considering has no place in the sentiments of the present time; and the policy of the legislature has been to place the relations of landlord and tenant upon the footing of other contracts, and to abolish the peculiarities handed down to us from former times. The doctrine of attornments, under which the tenant could, by acknowledging a stranger, change the estate of the reversioner into a mere right of action, has been substantially abolished both in England and in this country. (*Stat.* 11 *Geo.* II., *ch.* 19, § 11; 1 *R. L.*, 443, § 28; 1 *R. S.*, 744, § 3.)

Forfeiture by alienation of a greater estate than the tenant had, has for like reasons and for greater caution been abrogated by the Revised Statutes. (*Vol.* 1, *p.* 739, § 145.) This enactment, which was first introduced in the revision of 1830, declares that " a conveyance made by a tenant for life or years of a greater estate than he possessed or could lawfully convey shall not work a forfeiture of his estate, but shall pass to the grantee all the title, estate or interest which such tenant could lawfully convey." The provision was scarcely necessary, as we have seen that no conveyances except feoffments with livery ever affected the reversion or produced a forfeiture; and that species of conveyance was never in use in this state and was expressly abolished by another provision of the Revised Statutes. (1 *R. S.*, 738, § 136.) It however shows the solicitude of the legislature to do away with those peculiarities of the ancient tenures which are unsuited to our condition and which belong to modes of thinking and habits which have become obsolete. It would be an anomaly if an oral assertion should be held to divest a title, after the legislature had declared that the same declaration evidenced by a deliberate and solemn act in writing should have no such effect. It is certainly dishonest for any one who owes a duty to another, whether it concerns real or personal property, not to admit the obligation when rightfully claimed, or to set up pretensions in hostility to it; but the law in all such cases affords what it considers an ample remedy by allowing a resort to the courts to enforce the precise right which is disowned; so when the payment of rent is refused on the allegation that the relation out of which it would arise does not exist, there is no reason in the nature of the thing why the culpable party should incur any other liability than would rest upon any other debtor for a similar act. It clearly is not the duty of the courts to add to the number of cases in which a forfeiture may be incurred by the misconduct of a tenant, when it is apparent that the policy of the legislature

is to confine them to the narrowest limits. I think it has been shown that a verbal claim of the fee by the tenant was not among the causes of forfeiture which were recognized by the ancient law; and the inquiry now is whether there are precedents in our own times which require us to hold such a claim to have such an operation.

It was not contended by the appellant's counsel that there was any condition in the lease authorizing a reëntry for the non-payment of rent; and clearly there is not. The words " yielding and rendering therefor the rent of five pounds " are coupled with the provision that the rent " if not paid at the day appointed " is to " be recovered as an action of debt;" and there is nothing said in the instrument touching a reëntry, or that the lease shall be void in case of a default. The words " yielding and rendering " import a covenant but not a condition. (*Jackson* v. *McClallen*, 8 *Cow.*, 295; 2 *Bac. Ab.*, 556; *Boone* v. *Eyre*, 2 *W. Bl. Rep.*, 1314.) It is said to have been sometimes held that such words make a condition, when without such construction the party would have no remedy; but here the remedy is given in the same clause.

To maintain ejectment for the non-payment of rent, the demise must contain a proviso or condition for a reëntry. (*Arch. Land. and Ten.*, 161; *Van Rensselaer* v. *Jewett*, 2 *Comst.*, 148; *Jackson* v. *Hogeboom*, 11 *John.*, 163.) The last case only settles that ejectment, under the statute, will not lie without a clause of reëntry, and it admits that it would lie at common law upon a strict demand; but there was an express condition in the lease, though it was not followed by a clause of reëntry. Here there was neither a condition nor a provision for reëntry. In *Jackson* v. *Collins* (11 *John.*, 1), which was ejectment for the recovery of premises held under a perpetual lease, the indenture contained an express condition that the lessor might reënter upon a default in the payment of rent. No demand according to the formalities of the common law had been made, and it was

not shown that there was no distress on the premises; but it was proved that the defendant had denied the title of the lessor and the relation of landlord and tenant; and for the better part of the premises he had agreed by covenant to accept a deed from a stranger. The court held, Chief Justice KENT giving the opinion, that the tenant might by consent waive the formality of a strict demand, and that the disclaimer that had been proved was equal at least to an express waiver of the requisite demand. It had been contended by the plaintiff's counsel that the estate was forfeited by the denial of the tenancy, and in reference to this the Chief Justice was careful to say that the disclaimer by parol might not have been sufficient to amount of itself to a forfeiture of the lease. He said "that is not the point in the case. But it is sufficient to excuse the plaintiff from the necessity of a regular formal demand of the rent, in like manner as the act or declaration of the opposite party will in many cases supersede the necessity of a formal tender, and in like manner as such a disclaimer will excuse the omission of a notice to quit."

This case certainly affords no countenance to the position that an estate may be forfeited by a parol denial of the tenancy, but so far as an incidental remark will go, it repudiates that position.

*Jackson* v. *Vincent* (4 *Wend.*, 633) was in like manner an ejectment for the recovery of premises which had been demised to the defendant for a long term of years, subject to an annual rent. The case does not state the terms of the lease, or mention what conditions or covenants it contained. The defendant had admitted that he held the lease, but he refused upon the request of one of the owners of the reversion to pay any rent, stating that he had a warranty deed from a stranger. There being a verdict for the plaintiff, the opinion of the court on a motion to set it aside was delivered by Chief Justice SAVAGE. The verdict was held to be right, both upon the ground of a denial of

the tenancy and accepting a deed from a stranger, and because the disclaimer amounted to a waiver of the demand of rent.   As to the first position the Chief Justice refers to *Cruise's Digest, tit. 32, ch. 26,* § 2.   On looking into the book it will be seen that the passage is inaccurately quoted, and that it relates to a different branch of the law, namely, *disclaimer* and *disagreement,* by which one may divest himself of an estate which is attempted to be vested in him against his will.   Thus, in the section quoted by the Chief Justice, it is said by way of example, that " if a lease be made to A for life, remainder to B, and after A dies the law adjudges the frank-tenement to B till he *disagrees* or *disclaims;* and by the waiving thereof it vests in the donor or his heir;" and it is subsequently said that this disclaimer may be by deed.   An authority is cited to show that " the law is not so absurd as to force a man to take an estate against his will."   The ninth section, a part of which seems to be embraced in the extract made by the Chief Justice, is as follows :   " Any person may disagree to a *term for years.* Thus, where a person assigned the residue of a term for years in a rectory to two persons, and one of them disagreed to it, Lord Hale said that the disagreement of one of the assignees made the estate wholly the other's."   The court also refer to *Jackson* v. *Richards* (6 *Cow.*, 617), which turned upon the same doctrine of *disagreement,* and not at all to the law of forfeiture for denial of tenancy.   The only other reference to authority in support of that position is a citation to the part of Coke Littleton which I have extracted, and which certainly does not favor the idea of a forfeiture by a parol denial of tenancy.

The court then refer to *Jackson* v. *Collins,* and hold on the authority of that case that the declarations of the defendant were a waiver of the demand of rent.   " Why (the court say) should the landlord be put to the trouble of making a demand on the premises, of the precise sum, at a particular hour, when the tenant had put him at defiance by

De Lancey *against* Ganong.

telling him that he had a better title, that he held in fee from another source, and that he would pay no rent."

I fully agree with the court below, that the lease in *Jackson* v. *Vincent* must have contained a condition by which the estate was to be forfeited by the non-payment of rent, and that the reporter has inadvertently omitted that feature in the statement of facts. Assuming this to have been so, the case was well decided, though one of the reasons assigned cannot be sustained. If this were not so, the case of *Jackson* v. *Collins* had no application. In any event we cannot, I think, hold that the principle announced, that a parol denial of tenancy will forfeit an estate, has by force of that judgment become the law of the land.

The counsel for the respondent has endeavored to show that by denying the tenancy, the tenant establishes the commencement of a good adverse possession with respect to the statute of limitations; for which he refers to *Willison* v. *Watkins* (3 *Peters' R.*, 43); *Jackson* v. *Huntington* (5 *Peters' R.*, 401); and *Zeller's lessee* v. *Eckert* (4 *Howard*, 289). The argument is, that if the tenant can by thus disclaiming his relation to the landlord hold adversely to him, he must of necessity be able to terminate such adverse possession by maintaining an action to recover the possession.

The first of these cases disclosed a tenancy at will, where the representatives of the tenant, more than twenty years before the commencement of the action, refused to give up possession, and claimed title in themselves, and it was held that a good adverse possession had been established. In *Jackson* v. *Huntington*, the defendant had entered, claiming title under a conveyance in fee, and his reliance on the statute of limitations was sought to be answered by the allegation that his grantor held a fiduciary relation towards the parties under whom the plaintiff claimed; but the position was held not to be well taken. In the last of these cases the point decided was that a trustee of lands under an implied trust can by disavowing his trust character, with

notice to the owner, commence an adverse possession which will ripen into a title at the expiration of the period of limitation. It is unnecessary to inquire whether all these cases would be considered good law in this state, for neither of them professes to hold that the tenant of a definite term for years, under a sealed lease, can by any act or declaration on his part render his possession adverse to the reversioner. That he cannot has long been settled beyond the possibility of question. (*Jackson* v. *Davis*, 5 *Cow.*, 123; *Jackson* v. *Harsen*, 7 *id.*, 323; *Failing* v. *Schenck*, 3 *Hill*, 344.)

In *Newman* v. *Rutter* (8 *Watts*, 51) some remarks fell from the court which afford some countenance to the respondent's principal position, but the case was disposed of on other grounds.

The precise question has recently come under the consideration of the Court of Queen's Bench in England. The defendant was in possession under an unexpired lease for ninety-nine years at an annual rent and determinable on lives. On an application for rent by the agent of the plaintiff, who was entitled to the reversion, the defendant refused to pay it, and asserted that the fee was in himself. The judge at the assizes directed the jury to find for the plaintiff if they were of opinion that the words used by the defendant were a serious claim of the fee. Verdict for the plaintiff. The case was very learnedly argued, and by the unanimous opinion of the court it was held that the plaintiff was not entitled to recover. Lord DENMAN said he felt the danger of allowing an interest in land to be put an end to by mere words. PATTERSON, J., said no case had been cited where a lease for a definite term had been forfeited by mere words. They distinguished the case from tenancies at will and from year to year, in which, they said, a denial of tenancy was not a forfeiture but rather a waiver of notice to quit.

It is unnecessary to notice the earlier case of *Doe* v. *Flynn* (1 *Cr., Mee. & Ros.*, 137). If it conflicts with the case last mentioned it is overruled by it. The lessee for a

term nearly expired had delivered the possession to one claiming a title adverse to his lessor, and the plaintiff was permitted to recover in ejectment. This was an act resembling in its effect a feoffment with livery of seizin, which was always held to work a forfeiture. Still it is not conceded that here, where the statute has enjoined that no conveyance by a tenant shall forfeit his term, the principle could be sustained.

Upon the whole we are prepared to say that a tenant for a definite term does not forfeit his estate by refusing to pay rent and claiming the fee as his own.

We think the defendant is not estopped from setting up the lease. It is true he disclaimed holding under it. But the plaintiff did not act under any misapprehension occasioned by that disclaimer. The defendant said he owned the fee. Had the plaintiff credited this, she would not have brought this action. Her mistake was in a matter of law, in believing that such a disclaimer forfeited the estate. Had she understood the law as we feel bound to hold it, she would have sued for the rent on the lease, as she certainly did not believe the defendant was seized in fee, for had she credited that she would not have sued at all.

The judgment should be affirmed.

MASON, J. I do not think the evidence in this case shows such a forfeiture of the lease as allows the plaintiff to recover the premises in this action. The remedy by ejectment to enforce the payment of rent is never allowed except where a right of reëntry for non-payment of rent is expressly stipulated for between the parties. (*Van Rensselaer* v. *Jewett*, 2 *Comst.*, 141; 5 *Denio*, 121; 9 *Watts*, 258; 11 *John.*, 162; *Bacon's Abr.*, tit. *Rent*, K, 4.) The refusal to pay rent therefore worked no forfeiture of the lease, as the lease in question gives no right of reëntry for the non-payment of rent. The next and more important question in this case is whether the defendant forfeited this lease and

terminated his tenancy by a parol denial of his tenancy and disclaimer of the plaintiff's title, and claiming to own the premises himself.

Upon a careful examination of the authorities I am satisfied he did not. It must be admitted, however, that there are some *dicta* in the books which at first view seem to favor a forfeiture upon such evidence. Upon a careful examination of the cases, however, it will be found that they are cases of a tenancy at will or sufferance, or from year to year, which lasts only as long as the parties please, and where what is called a disclaimer is evidence of the cessation of the will; or where in such cases it has been held that such a disclaimer furnishes evidence in answer to the disclaiming party's assertion that he has had no notice to quit, inasmuch as it would be idle to prove such notice where a tenant has asserted that there is no longer any tenancy. But I have not been able to find any case where the judgment of the court has proceeded upon the distinct ground that a parol denial of the landlord's title worked a forfeiture of a term for years.

Mere words of denial or disclaimer never worked a forfeiture either under the feudal law, or the more enlightened common law of England.

The rule of forfeiture in such cases is laid down in Bacon, Comyn and Cruise, in the following terms: "This doctrine of forfeiture is founded on a rule of the feudal law, that if the vassal denied the tenure he forfeited his feud. This denial may be where he claims the reversion himself, or accepts a gift of it from a stranger, or acknowledges it to be in a stranger, for in all these cases he denies that he holds the feud from the lord; but as by the feudal law the vassal was to be convicted of this denial, so in the English common law, those acts which plainly amount to a denial must be done in a court of record to make them a forfeiture, because such act of denial appearing on the record is equivalent to a conviction upon solemn trial. All other denials

that might be used by great lords for trepanning their tenants, and for a pretence to seize their estates, were by our law rejected, for such convictions might be obtained without any just cause, but the denial of the tenure upon record could never be counterfeited or abused to any injustice." (1 *Cruise*, 125; *Bacon's Abr.*, title *Estate for Life and Occupancy*, letter *C*, vol. 3, p. 466, *Bouv. ed.*; *Comyn's Dig.*, tit. *Forfeiture*, *A* (5), note a, vol. 4, p. 397.) The same doctrine is affirmed by the Queen's Bench in the recent case of *Graves & Downe* v. *Wells & Trowbridge* (10 *Adol. & Ellis*, 427), where it was expressly held that such a parol denial and disclaimer did not work a forfeiture. (*See Bacon's Abr.*, tit. *Leases and Terms for Years*, letter *T*, 2, vol. 5, p. 668, *Bouv. ed.*)

The same rule obtains with us. (*Jackson ex dem. Livingston* v. *Kisselbrack*, 10 *John.*, 336; 7 *John.*, 186; 16 *John.*, 302; 11 *Wend.*, 616; 15 *Wend.*, 400.) This must be so under our statute, which enacts that no estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall be hereafter created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing. (2 *R. S.*, 134, § 6.) The cases of *Van Schaick* v. *Vincent* (4 *Wend.*, 633) and *Van Rensselaer* v. *Collins* (11 *John.*, 1), which are understood to contain some *dicta* holding a contrary doctrine, do not determine anything hostile to the views which we have above expressed, and they are satisfactorily disposed of by the court below.

If we are right in the views above expressed, then this action cannot be maintained: first, for the reason that the lease does not provide for a forfeiture for the non-payment of rent, and secondly, because these parol decla-

rations. of `denial and disclaimer do not work a forfeiture thereof.

The judgment of the court should be affirmed.

MORSE, J., did not hear the argument.

All the other judges concurring,

Judgment affirmed