Markowitz, J.
(dissenting). I assume that delivery and acceptance of the keys to defendant’s apartment did not constitute a surrender and acceptance of the lease. But I reject, as without merit, plaintiff’s arguments that it was ‘ ‘ not obligated to attempt to mitigate the damages by rerenting the apartment ”; that the “ landlord may allow the apartment to remain vacant [for six months] and recover rent from the tenant ’ ’; that a “ clause in the lease permitting the landlord to relet does not impose a duty on the landlord to relet ”. Under modern standards, such a position is unacceptable on its face.
*266 The record makes obvious why plaintiff takes this manifestly unjust position: The lease ran from July 1, 1964 to June 30, 1969, at a rental of $410 per month. Defendant paid his rent for four and one-half years to January 1, 1969, and moved out in January 1, 1969, after advising plaintiff’s manager of his contemplated move in November of 1968. Defendant was told that he would have to lose his month’s deposit of $410 and acquiesced; that plaintiff had a long waiting list of people for the apartments in the building. Belying on this promise defendant delivered his keys to plaintiff, which thereafter showed the apartment to at least half a dozen or more prospective tenants. But instead of asking $410 as rent for the six months of the lease which remained, plaintiff demanded $495. Having thus foreclosed rerental at the price payable by defendant, plaintiff would now shift, under the landlord-slanted printed revisions of the lease, the resultant failure to relet, from itself to defendant.
The cases relied on by plaintiff are based on the rule of Becar v. Flues (64 N. Y. 518), fashioned almost one hundred years ago on the archaic possessory principles applicable only to real property: a landlord could not oust a tenant from possession though he defaulted in the payment of rent (De Lancey v. Ganong, 9 N. Y. 9). A tenant, though not in possession, was liable for the rent for the period of his leasehold, whether or not the landlord tried to rerent the property for such period (Becar v. Flues, supra).
In the interval, the landlord’s dilemma has been obviated by the statutes authorizing summary proceedings. Plaintiff contends that, so far as the tenant is concerned, he is still at the mercy of the landlord. I do not agree.
The underlying premise for the rule of Becar v. Flues (supra) no longer exists. In the days of an agrarian economy the intent of the parties was that a landlord, having given the tenant possession for a stated period of time, could not interfere with such possession — he was required to leave the tenant strictly alone for the period. Today, in an urban economy a new and major additional element has evolved: a tenant in an apartment relies during his tenancy on sundry services rendered by the landlord — on landlord’s water system, lighting system, heating system, janitorial services, painting and plumbing services, etc. Today, in short, a landlord of a multiple residential building is not merely renting land and space; he is in the business of managing and maintaining the premises in which the apartments are located.
In analyzing the mutual obligations of the parties, both *267 levels — possession and services, rental of space and operation of a business — must now be considered. We no longer deal solely with what was deemed a sale of demised property for a temporary period. The situation is now more akin to a contract for the provision by landlord of goods (space, personal property) and services. To which must be added the new factor of shortage of space — a tenant is no longer able to move at will; a landlord can relet wtihout difficulty. The harsh rule of Becar v. Flues (supra) no longer meets contemporary needs.
The trend away from the Becar rule is not new. In a series of cases the Court of Appeals has limited landlords to the deficiency in rent collected by them after good faith efforts to relet, where the term of the lease has been aborted by summary proceedings (Hermitage Co. v. Levine, 248 N. Y. 333, 337 ; Lenco, Inc. v. Hirschfeld, 247 N. Y. 44, 49-50 ; Kottler v. New York Bargain House, 242 N. Y. 28, 33; see, also, Hines v. Bisgeier, 244 App. Div. 354 ; 45 East 57 St. Co. v. Millar, 214 App. Div. 189). The Court of Appeals has also said that if, in such cases, the landlord need not, under the lease, diligently endeavor to relet the premises, the provision to that effect constitutes an inoperable penalty (Lenco, Inc. v. Hirschfeld, supra ; Seidlits v. Auerbach, 230 N. Y. 167 ; 884 West End Ave. Corp. v. Pearlman, 201 App. Div. 12, affd. 234 N. Y. 589). I find no logical basis to distinguish between the situation where summary proceedings terminated occupancy and the voluntary return of the space to the landlord by the tenant before the lease gave out.
We face here not findings after trial, but a motion by plaintiff for summary judgment. Absent a showing by plaintiff that it diligently endeavored to relet the premises and could not do so at the amount of the rent payable by defendant (or less), the motion was properly denied (812 Park Ave. Corp. v. Pescara, 268 App. Div. 436, affd. 294 N. Y. 792 ; s. c. 267 App. Div. 817).
Moreover, plaintiff’s damages were unliquidated, not liquidated (cases cited, supra); so that at least an assessment of damages is required.
Finally I agree with Special Term that the provision in the ‘ ‘ veritable ocean of fine print * * * buried deep” in the lease, attempting to exonerate plaintiff from the exercise of reasonable effort to mitigate its damages, is unconscionable. As this court held in Tai on Luck Corp. v. Cirota (N. Y. L. J., May 25, 1970, p. 2, col. 1), good faith must be read into the clauses of a lease — a landlord may not be permitted to victimize a tenant by an unconscionable invocation of the power given in the lease.
*268 I therefore dissent and vote to affirm the order appealed from, with costs.
Streit and Quinn, JJ., concur in Per Curiam opinion; Markowitz, J., dissents in memorandum.
Order reversed and summary judgment granted, etc.