By the Court. Denio, J.
A condition annexed to a conveyance in fee, that the grantee, his heirs and assigns shall pay to the grantor and his heirs an annual rent, and that in default of payment the grantor or his heirs may reenter, is a lawful condition. Littleton puts it as an example of a condition in deed, at the commencement of that part of his treatise which relates to estates upon condition. Such an estate, he says, “is as if a man by deed indented enfeoffs another in fee simple, reserving to him and his heirs, yearly, a certain rent payable at one feast or divers feasts, per annum, on condition that if the rent be behind, &c., that it shall be lawful for the feoffor and his heirs to enter, &c., and if it happen the rent to be behind by a week after any day of payment of it, or by a month after any day of payment of it, or by half a year, &c., that then it shall be lawful for the feoffor, or his heirs to enter, &c. In these cases, if the. rent be not paid at such time, or before such time limited and specified within the condition comprised in the indenture, then may the feoffor or his heirs enter into such lands or tenements, and them of his former estate, to have and hold, and the feoffee quite to oust thereof. And it is called an estate upon condition, because that the estate of the feoffee is defeasible, if the condition be not performed,” &c. (§ 325.) The systematic writers upon the law of real property, from that time to the present, have assumed the legality of such conditions; and the substance of the condition in the conveyance under consideration is usually put as an example. (2 Bl. Com., 154; Cruise's Dig., vol. 2, ch. 1, § 1, pl. 3, 9; 4 Kent Com., 123.) Among the numerous authorities referred to by the defendant’s counsel, I have been unable to find a single dictum or the slightest hint that such conditions were contrary to law, or that they could only be attached to estates for life or years, or that a common law tenure between . the parties, or a reversion in the grantors, were necessary to uphold them. There is, moreover, nothing in the case of De Peyster v. Michael, lately decided in this court (2 Seld., 467), which, properly understood, creates a doubt as to the validity j of such a condition, or the lawfulness of annexing one to an ' estate in fee.
*103 The books which treat of such estates do, indeed, state that a condition repugnant to the nature of the estate granted is void; and the instances given are of feoffments, or conveyances in fee, by bargain and sale, with a condition that the feoffee or grantee shall not alien; and they say that even this could be done before the statute of quia em/ptores, because the feoffor had a possibility of reverter, by the expiration of the feudal investiture upon the failure of heirs of the tenant. ( Co. Litt., 223, a.) The argument in the opinion of the Chief Judge, in De Peyster v. Michael, consisted in showing that a condition for the payment of one-quarter part of the value of the land and improvements upon each sale by the grantee, or those who should succeed to his estate, was a restraint upon alienation repugnant to the nature of a fee simple, within the sense of the authorities ; and that, although this could be done where there was a reversion, as upon the grant of an estate for life or years, or a possibility of reverter, as upon a feoffment before the statute of quia emqotores, it was unlawful in this State, in respect to a conveyance in fee, after the reenactment of that statute by the Legislature. It seems to me, that there is nothing in the reasoning of that opinion to encourage one to question the validity of a clause of reentry for non-payment of rent in a conveyance in fee, even though the Chief Judge had not taken care to state, as he has done, that the principles which he laid down would leave to the grantee in these conveyances, and his representatives, the full benefit of the remedy of reentry for the enforcement of their right to the rent.
But assuming that the estate conveyed to William Ball was defeasible by the non-performance of the condition to pay the annual rent; no one but the grantor or his heirs could, at common law, enter for the breach of a condition subsequent. (Litt., § 347; Co. Litt., 214, b.; 4 Kent Com., 127; Nicoll v. The N. Y. and E. R. R., 2 Kern., 121.)
This was the consequence of a maxim of the common law, that nothing in action, entry or reentry, could be granted over; for, as Coke says: “ Under color thereof, pretended titles might be granted to great men, whereby right might be trod *104 den down and the weak oppressed, which the common law forbiddeth, as men. to grant before they be in-possession.” ( Co. Litt., supra.) The. reason upon which this maxim was founded has, no doubt, become in great measure obsolete; still, the principle that a right of entry cannot in general be granted over is,. I am inclined to believe, still a part of the law, notwithstanding the tendency of modern decisions and the provisions of the .Code, This, then, is the first difficulty in the plaintiff’s case. He brings this action as the assignee, by devise,- of the grantor, and not as his heir; and he is disabled I from maintaining the action, unless the act of 1805, and its different reenactments, apply to the case. (Laws 1805, ch. 98; 1 R. L., 1813, 364, §3; 1 R. S., 748, § 25.) I have elsewhere stated the origin and history of the seiios of enactments in favor of the assignees of reversions, of which this forms a supplement, and have shown that it enabled the I -grantees of a perpetual rent-charge to maintain an action on • the covenants for the payment of rent. But the original statute of 32 Henry Till (ch. 34), gives to the assignee mentioned in it not only a remedy by action, but the “like advantages” “by entry for non-payment of the rent,” which the grantors might have had, and this feature is preserved in the reenactments in this State (2 Jones & Var., 184; 1 R. L., 1813, 363, § 1); "and in the Revised Statutes of -1830, the expression is that the assignees “ shall have the same remedies by entry, action Í or otherwise,” as their-grantor or lessor had or might have had. ( Vol. 1, 747, § 23.) Then follows the provision first introduced by the act of 1805, and continued in the revisions, that this provision shall extend to grants or leases in fee reserving rents, as well as to leases for life or years. But in all the acts the expression is retained which is found in the statute of Henry VIII, “as if the reversion had remained in such lessor or grantor.” In grants in fee, there being no reversion, these words are inapplicable, or at least incongruous; and to make the provisions coherent, they should be read as though the lan- ; guage were, “ as if said right of entry had remained in the (lessor or grantor;” or this particular expression in the statutes *105 should he limited to the cases embraced in the provision where the grantor had a reversion, and be dropped in the cases where it is made to relate to grants in fee, upon the rule of construction reddendo singula singulis. Ho one can for a moment doubt the intention of the Legislature to confer upon the assignees of a grantor in fee reserving rent, the remedy by entry for the non-payment of such rent, precisely as the grantor himself had it before he parted with the right. In other words, the design is plain to make the right of entry transferable, and thus to change, to this extent, in favor of this class of conditions, the rule of the common law. This is so manifest to my mind from the reading of the statutes, that anything I could further say would be likely to obscure rather than to elucidate it.
There is the question, in the next place, whether, where one has a perpetual rent and a right of entry on the land of another to enforce its payment, transmissible to his heirs, but not legally transferable by sale or assignment, the Legislature can lawfully interpose, by an enactment declaring that thenceforward the rent and right of entry shall be subject to transfer like a rent incident to a reversion; in other words, whether the act of 1805 can be applied to conveyances and reservations of rent existing when it was passed, without violating the provision of the Constitution of the United States, which protects contracts from being impaired by the State Legislatures. I think the statute is not subject to question on that ground. A conveyance, I agree, is as fully within the constitutional provision as an executory contract; and the only point is, whether the obligations of the contract contained in this conveyance have been impaired within the sense of the provision. Clearly the rights of Van Eensselaer, the grantor, have not been affected unfavorably. They have been manifestly advanced; for the rent, and the remedy to enforce it, have been improved by having imparted to it a vendible quality. Hor have the obligations of the grantee, or his representatives or assigns, been increased, or their remedies changed, to their prejudice. The estate of the grantee was subject to be destroyed by a reentry for non-pay *106 ment of rent before the statute, and no new or further liability is attached to it now. A reentry can be sustained in precisely the same cases in which it could before, and in no others. The j contract in question is affected in precisely the same manner as all existing non-negotiable choses in action were by the Code of j Procedure, when it rendered them capable of assignment so I as to vest the legal title and the right to sue upon them in the "assignee. (§111.) Yet the courts have uniformly applied this provision of the Code to all existing contracts, equally with those made after the Code was enacted. As to the remedies of the grantee and his representatives, and privies in estate, \ if they have been changed at all, it is to give them a right of action where none existed before. The act of Henry VIII, which has been regularly followed in this particular in our reenactment, and in the revision, gave a reciprocal remedy to the grantee or lessee, and his representatives, against the assignee of the reversion; and, by the act of 1805, bringing grants in fee within the purview of these provisions, the grantees acquired a remedy against the assignees of the grantor , which they did not possess before. They can now sue such | assignees for any breach of the grantor’s covenants, which they i probably could not have done at common law, and certainly not by any of the statutes prior to the act of 1805; and they "are not deprived of any remedy which they might have had against the grantor himself, and his personal representatives, upon his express covenants.
It is, moreover, argued on behalf of the defendant, that if all other difficulties were removed, an action in the nature of ejectment could not be maintained without a strict demand of the rent on the land and at the precise time at which it became payable — a formality which, it is admitted, has not taken place. The common law requires such a demand preparatory to bringing ejectment (Co. Litt, 201, b, 202, a); and it was for the purpose of avoiding “the many niceties which attend reentries at common law,” as it is expressed in the preamble, that the statute (4 Geo. II, ch. 28) was passed. It is limited to cases between landlord and tenant where there is a right by *107 law in the former to reenter; and it makes the service of a . declaration in ejectment to stand in the place and stead of a demand and reentry. The provision was early reenacted in this country, and has been continued .in each subsequent revision of the laws. (2 Jones & Var., 238, § 23; 1 K. & R., 134, §23; 1 R. L., 1813, 440, §23; 2 R. S, 505, §30.) The statutes require, to warrant the action, evidence that no sufficient distress can be found on the premises to satisfy the rent due. The defendant’s position is, that these acts do not apply to the case, because, as it is argued, the reservation of an annual payment upon a conveyance in fee is not properly rent, as no distress can of common right be made for it, and it is only distrainable by virtue of an express provision contained in the indenture; and the statute requires it to be a case between landlord and tenant, which implies, it is said, that the relation should exist at common law. But such reservations as the one before us were considered as creating a rent within the legal meaning of that term, from the time of Littleton , to the present. We have seen that it was called rent in section 325 of the treatise already quoted; and by looking into sections 217 and 218, we see that it was one of the recognized species of rent, and was called rent-charge. It was a rent, too, as has been shown, for the non-payment of which a reentry , was given at common law, where the right to reenter was j provided for in the deed. The act of 4805 assumes that rent! may be reserved upon a conveyance in fee, and the preamble of that act states that such reservations had been long in usev in this State. Mow the inconvenience which the statutes^ making a declaration in ejectment stand in the place of a strict demand zwere intended to remedy, was the great particularity and nicety attending this demand at common law; and this was precisely as applicable to rents arising upon grants in fee as upon leases for life or years. I do not, therefore, see any reason, in the nature of the case, or in the language of the statutes, for confining this remedy by ejectment to cases of rent-service; and I am of opinion that it is applicable to all cases of non-payment of rent where there was a right to reenter *108 at common law. This conclusion is confirmed by the consideration that actions of ejectment, for non-payment of rents of this kind, have been frequently under discussion in the courts of this State, and that it has been uniformly assumed that a strict demand was unnecessary, if the plaintiff could show that there was no sufficient distress. (Jackson v. Collins, 11 John., 1; Van Rensselaer v. Jewett, 5 Denio, 121; The same v. Hays, 5 id., 477; The same v. Jewett, 2 Comst., 141; The same v. Snyder, 3 Kern., 299.) The last mentioned case involved the precise question. It was brought after the act of 1846 (ch. 274), abolishing distress for rent. No demand of rent was shown, but it was held that the notice provided for in the 3d section of the act of 1846 stood in the place of the evidence of a want of goods upon which to distrain. Unless the statutes giving ejectment without a demand applied to rents reserved upon conveyances in fee, a strict demand was essential to have been proved, and the act of 1846 had no application to the case.
These reasons have led me to the conclusion, that none of the points, so ingeniously taken and ably urged on the part of the defendant, can be sustained; and I am in favor of affirming the judgment of the Supreme Court.
Allen and Sellen, Js., took no part in the decision; all the other judges concurring,
Judgment affirmed.