Tyler *v.* Heidorn.

[MONROE GENERAL TERM, September 3, 1866. *Welles, Johnson* and *E. Darwin Smith,* Justices.]

---

TYLER *vs.* HEIDORN.

<div style="float:right; border:1px solid;">46b 439<br>64ad 7</div>

The words "hath granted, bargained, sold, released and confirmed," in the granting clause of some of the earlier conveyances of the Van Rensselaer title, are not alone decisive, in determining the question whether those conveyances are more properly termed leases in fee, or deeds of assignment. They must be construed in connection with the other portions of the conveyance.

It seems that by a conveyance in fee of manor lands, reserving rent, the relation of landlord and tenant is made to exist, as between the grantor and grantee.

The parties who are entitled to the benefits, and bound to the performance, of such a contract, are not simply those who executed the original conveyance, but all who have succeeded to their position, or who hold under them, whether as heirs, devisees or assignees of the original parties.

Such an agreement is intended to be *perpetual*, and to bind subsequent parties. The covenants *run with the land*, being connected with the estate, and growing out of its enjoyment.

The parties succeeding to the title of the original grantor—the covenantee in regard to the rent—are entitled to enforce the covenant, without the aid of any reversion in the assignees.

Such a covenant runs not only with the land, (proper,) but with incorporeal hereditaments.

The rent reserved in a lease in fee, if not strictly an *estate in the land*, is nevertheless a *hereditament*, and is descendible and inheritable.

The *assignees* of the *grantee* or *covenantor* in such a lease are liable on the covenant to pay rent.

Such liability does not depend on the existence of a reversion, and is within the provisions of the act of 1805, (*Laws of* 1805, *ch.* 98; 1 *R. S.* 747, §§ 23, 24, 25,) and of the Code, (§§ 111, 112.)

There is no solid reason for any distinction between the *assigns* of the *covenantor,* and the *assigns* of the *covenantee,* in regard to the right or obligation of such covenants.

The remedies which the grantor or lessor may pursue, in the event of the non-payment of rent, are, 1. *Covenant,* to recover the rent itself, either as between the original parties, or as between the parties who have succeeded to their rights; or, 2. *Ejectment,* to recover the premises for the non-payment of the rent.

Ejectment is but a mode of enforcing the right of *re-entry;* and the authority to pursue it depends in part upon the provisions of the contract, and in part upon the provisions of the common and statute law. It is founded upon the provision of the contract which gives the party the right to re-enter the premises in the event of the non-payment of the rent, and usually, also, in the event of the want of a sufficient distress on the premises to satisfy the rent; and where a right of entry for non-payment of rent is not reserved, the landlord can not maintain ejectment for non-payment of rent.

This condition is a *lawful* condition, and the breach of it gives a right to re-enter; and a reversion is not necessary to uphold it.

The right to re-enter is conferred upon the *assignees* of the grantor, by the act of 1805; and the act is constitutional.

Where ejectment was brought for the non-payment of rent, and the proceedings were according to the common law, a strict *demand* of the rent, made with all the niceties required by the common law, was essential.

Yet this strict demand could be dispensed with, if the plaintiff could show that there was no sufficient distress on the premises.

But a demand of the rent, according to the course of the common law, is rendered unnecessary, under the provisions of the Revised Statutes, (2 *R. S.* 505, § 1,) whenever a half year's rent or more is due, and no sufficient distress can be found on the premises, and the landlord has a subsisting right by law to re-enter for the non-payment of the rent; the commencement of the suit being authorized to operate as a substitute for a demand of the rent and an actual re-entry.

The provisions of this statute are applicable as well to grants or leases *in fee,* reserving rent, as to leases for *life* or *years.*

The service of the *notice* under the third section of the act of 1846, (*Laws of* 1846, *ch.* 274,) renders unnecessary the proof of the want of any sufficient distress.

To entitle a party to bring ejectment, no previous *actual entry* on the premises is necessary; a *right* to enter for condition broken, and to *immediate possession,* being all that is necessary.

The rents and services reserved and stipulated by the manor leases in fee executed by Stephen Van Rensselaer are not inconsistent with the abolition of

Tyler *v.* Heidorn.

feudal tenures, or with the independent and allodial tenure under the state itself which the "Act concerning tenures," passed in 1787, (1 *R. L.* 70, §§ 1 and 6,) effected.

The obligation of the contract on the part of the lessee, contained in those leases, is not essentially a *personal servitude*, and therefore abolished by the late amendment to the federal constitution providing that neither slavery nor involuntary servitude shall exist within the United States.

The amendment in question was not intended to, and does not, embrace *contract* service of any description, or such as flows from contracts made by a party, or grows out of a *contract* made by another person in regard to property, and connected with its enjoyment, which property such party derives from such other person and personally enjoys. Such service is never involuntary.

When an assignee of the lessee takes his title to the land, he takes it charged with the burden which the lessee has inseparably annexed to it. By taking the benefit of the grant he *voluntarily*, assumes the liabilities of the original grantee, in respect to the subject of the grant.

*It seems* there is no absolute and unqualified rule that the mere lapse of time will furnish conclusive evidence of the payment of rent; but it is a presumption of fact, to be determined by the court and jury upon a consideration of all the evidence, and all the facts and circumstances bearing upon it.

Where, in an action of ejectment, for rent reserved in a lease in fee executed in 1794, the course of proof which the plaintiff was called upon to pursue did not naturally direct the mind to the necessity of any proof of payment or non-payment of rent, except for the particular year (1862) when his demand was made and on which the action was based; *Held* that, taking this circumstance into consideration, as well as the conceded existence of an instrument providing for the payment of a perpetual rent, obligatory upon the parties to the suit—the possession and production of this instrument by the plaintiff—the absence of any positive proof of non-payment, or of any facts and circumstances leading to a presumption of the extinguishment of the rent—and the transmission to the plaintiff of all the rights and interests which the original lessor had to the property and the rents, subsequent to the execution of the instrument—the court ought not to indulge the presumption that the rent was extinguished, or discharged, or paid.

When the plaintiff, in an action of ejectment, seeks to recover under a different title, in hostility to all rights under the grant, the defendant can set up adverse possession, as a defense. But when the action is brought because of the non-payment of rent reserved in a lease in fee, then, as the defendant claims under precisely the same title, and instrument, his possession can not be adverse; nor will the action be barred by the statute of limitations.

Section 86 of the Code of Procedure, making the possession of the tenant the possession of the landlord whenever the relation of landlord and tenant shall exist, is applicable to such a case.

THIS was an action brought upon a contract or indenture, and was tried before John B. Gale, Esq. as referee. Upon the trial the plaintiff offered and read in evidence, a contract made by, and between Stephen Van Rensselaer, since deceased, and Lebbeus Herrick, and bearing date the 5th day of June, A. D. 1794, the execution of which contract was admitted, and which was in substance set forth in the complaint. The contract was set forth in the complaint, which alleged, 1. A seisin of the premises in Stephen Van Rensselaer, in June, 1794. 2. A grant of the same in fee, June 5, 1794, to Lebbeus Herrick, his heirs and assigns, at a yearly rent of twelve and six tenths bushels of wheat, covenanted to be paid by Herrick and his heirs and assigns to Van Rensselaer and his heirs and assigns. 3. A right of distress in case of non-payment. 4. A right of re-entry, in default of sufficient distress. 5. A transfer of all Van Rensselaer's interest under the instrument to the plaintiff, and of all Herrick's interest to the defendant. 6. Rent in arrear and unpaid for twelve years — no sufficient distress — a demand of the rent in 1862 at common law, and there was a prayer for judgment. The plaintiff then offered and read in evidence the last will and testament of the said Stephen Van Rensselaer, deceased, the execution of which was admitted, whereby the testator gave, devised and bequeathed to his son William P., his heirs and assigns, all his lands, tenements, hereditaments and real estate on the east side of Hudson's river in the county of Rensselaer, together with the appurtenances, rents, issues and profits thereof, embracing the premises in question.

The plaintiff then offered and read in evidence a deed of assignment from the said William P. Van Rensselaer to Andrew White and others in trust, for the benefit of the creditors of the said William P. Van Rensselaer, of whatever the said William P. took by the will of his father in the premises in question.

Several other deeds of assignment were read in evidence, which proved that whatever estate in the premises came to

Tyler *v.* Heidorn.

the said William P. Van Rensselaer, and whatever interest he thereby took or acquired in the contract, or in the covenants thereof, upon which this action is brought, and to all such arrears thereon of rent as may have accrued after the death of the said Stephen Van Rensselaer, and remained unpaid, came to the plaintiff on or about the 28th day of March, 1861.

The plaintiff then proved that the action was commenced March 27, 1862; and that on the 1st day of January, 1862, the plaintiff demanded the rent named in the instrument, of Lebbeus Herrick, described in the complaint, between four and a quarter past four o'clock in the afternoon, and waited until after sundown, and no one paid it. The demand was on the front steps of the house then occupied by S. Van Rensselaer in the town of Watervliet, being the same place provided in said instrument for the payment of said rent. It also appeared upon cross-examination by the defendant, that the plaintiff had no place for receiving rents where he demanded it; that up to the death of S. Van Rensselaer in 1839, the place where rent was received under similar leases, was on the opposite side of the street, near the mansion house mentioned in said complaint, and after his decease, on the opposite side of the river, at Bath, within a mile of the same place. There was a general notice in the newspapers, fixing Bath as the place of payment, in 1840; and again in 1854, fixing 44 State street as the place.

The plaintiff then proved that the defendant was the owner and occupant of thirty-five acres of the premises in question, the boundaries whereof are set forth in the report of the referee.

The evidence here closed. The defendant, thereupon, moved for a dismissal of the complaint on the following grounds: *First.* The contract sued upon was an assignment, and not a lease, and left no reversion in the grantor, and the demand of rent was not made in the right place. *Second.* Being an assignment, it did not create the relation of landlord and

tenant, and that relation can be created only by a lease. *Third.* The plaintiff has alleged that the assignor, Van Rensselaer, was, when he made the deed, seised and possessed in fee. He has not proved it, nor has he offered evidence upon that point. Having failed to prove that issue, the plaintiff has failed to make out his action. *Fourth.* When the instrument upon which this action was brought was made, there was a statute in force, which provided that every purchaser of an estate in fee should hold the lands purchased " of the same fee," by the same services and customs by which the person or persons making such gift, sale or alienation before held the same lands or tenements. The design and effect of that statute were to prevent covenants and conditions, like those sued upon, from having any force and effect as against third parties, in the imposition of rent or services upon the lands. That statute must be read as a part of this contract, and is fatal to this action. *Fifth.* The plaintiff has failed to prove that he has any title to or interest in the premises, and, therefore, can not recover, because he is disabled from maintaining such action, for the want of title. *Sixth.* This action can not be sustained, upon the principle of the case of *Jemmot* v. *Cooley,* (1 *Saund.* 112,) for there is no agreement in this case, for using the premises until the amount of rent shall be made; and here the contract is void, because in conflict with the statute concerning tenures, passed in 1787. *Seventh.* The plaintiff was not the grantee of the condition of re-entry, because that could not, and did not, pass by the devise or by the assignments. *Eighth.* The lapse of time without any payment of rent is sufficient evidence that it has been released and discharged. *Ninth.* Section 78 of the Code provides that no action for the recovery of real property, or for the recovery of the possession thereof, shall be maintained, unless it appears that the plaintiff, his ancestor, predecessor or grantor, was seised and possessed of the premises in question, within twenty years before the commencement of the action. And section 79 provides that no cause of

action or defense to an action founded upon the title to real property, or rents or services out of the same, shall be effectual, unless it appear that the person prosecuting the action or making the defense, or under whose title the action is prosecuted or the defense is made, or the ancestor, predecessor or grantor of such person, was seised or possessed of the premises in question within twenty years. These statutes were each a bar to this action.

The referee decided each of said points against the defendant, and denied the motion to dismiss the complaint, and the defendant duly excepted thereto and to the decision of the said referee upon each of the said points. The evidence being closed, the case was submitted to the said referee upon the foregoing evidence, which was all that was taken in the case. Whereupon the said referee found the following facts:

1. That about the 5th day of June, 1794, Stephen Van Rensselaer was seised in fee of the premises in question, and as party of the first part, made a contract or indenture, whereby he sold and assigned all his right, title and interest in and to the premises to Lebbeus Herrick and his heirs and assigns forever.

2. That said Herrick, as party of the second part, executed the said contract or indenture, and thereby agreed to pay annually twelve and six tenths bushels good merchantable wheat, and further agreed that in default of payment, the covenantee and his heirs and assigns might enter and distrain, and for want of sufficient distress, might re-enter upon said lands.

3. That before the commencement of the action, and on the 7th day of November, A. D. 1861, the rights of the covenantee in said contract came to the plaintiff, and remained in him at the commencement of the action.

4. That the defendant was, at the time of the commencement of the action, and had been for years prior thereto, the owner in fee of said premises, and held the same immediately of the state, and that the contract upon which the action is

brought was one of the assignments by means whereof the title came to the defendant, and that the plaintiff had, when the action was commenced, no estate or interest in the premises.

5. That there was in arrear and unpaid all the rent provided for from the date of the contract, there being no evidence of any payments.

6. That the relations of landlord and tenant were not created by the contract sued upon, and do not exist between the parties to this action.

Whereupon the referee found the following conclusions of law : That the defendant was the owner of the premises, and held immediately of the state, and the plaintiff had no reversion or possibility of reverter ; in other words, had no estate or possibility of acquiring any by means of the contract sued upon ; and that by reason thereof the plaintiff was entitled to the possession to the exclusion of the defendant, because of the non-payment of the alleged rent.

The defendant duly excepted to the finding of said referee, that Stephen Van Rensselaer was seised in fee of the premises in question when he made and delivered the deed sued upon ; also to the finding of said referee that the rights of the covenantee in said contract to the rents came to and remained in the plaintiff.

The defendant also duly excepted to the finding of said referee that the plaintiff was entitled to recover possession of the premises.

Judgment having been entered upon the referee's report, for the plaintiff, for the possession of the premises, and for $119.50 costs, the defendant appealed therefrom to the general term.

*W. A. Beach,* for the plaintiff, (respondent.)

*A. Bingham,* for the defendant, (appellant.)

Tyler *v.* Heidorn.

*By the Court,* Hogeboom, J. So many cases have arisen in regard to the lands held under the Van Rensselaer title, that most of the questions respecting them ought to be deemed at rest, at least in this court. It may not be unprofitable to make a brief digest of the leading decisions in regard to the principal questions involved. They may be embraced under the following heads : 1. The nature of the relations between the *parties* to the conveyances out of which the questions arise, and the nature of the *rent* or payment which is charged, reserved or secured by such conveyances. 2. How far, and to what extent, and under what circumstances, these relations continue between those who *succeed* to the rights and title of the original parties. 3. The *remedies* proper to be pursued in case of the non-payment of the rent, and for and against whom these remedies may be enforced.

I. The conveyances in question usually contained a grant or lease of the lands, in fee simple, to the grantee or lessee— a covenant to pay a perpetual annual rent—a covenant or condition authorizing a distress on the part of the grantor or lessor, and in default of sufficient distress, a right of re-entry. These covenants and conditions were, by the terms of the instrument, usually made obligatory, as to their burthens, upon the heirs and assigns of the original covenantors, and the benefits thereof secured to the representatives, heirs and assigns of the original covenantees. For examples of these instruments, see the following cases : *Van Rensselaer* v. *Jones*, (5 *Denio*, 449 ;) *Depeyster* v. *Michael*, (6 *N. Y. Rep.* 467 ;) *Van Rensselaer* v. *Snyder*, (13 *id.* 299 ;) *Same* v. *Hays*, (19 *id.* 68 ;) *Same* v. *Ball*, (*Id.* 100 ;) *Same* v. *Smith*, (27 *Barb.* 104 ;) *Main* v. *Green*, (32 *id.* 448 ;) *Main* v. *Davis*, (*Id.* 461.)

The question has been much debated, more especially since the decision of the case of *Depeyster* v. *Michael*, (6 *N. Y. Rep.* 467,) whether these conveyances were more properly termed leases in fee, or deeds of assignment ; whether they created

the relation of landlord and tenant, and conferred and imposed upon the parties the rights and obligations of that relation. In the books they appear to be indifferently styled grants, or leases in fee; sometimes the one term being used, and sometimes the other. (*Van Rensselaer* v. *Jones, 5 Denio,* 449, *Same* v. *Gallup, Id.* 455. *Same* v. *Roberts, Id.* 470. *Same* v. *Hayes, Id.* 477. *Same* v. *Snyder,* 13 *N. Y. Rep.* 299. *Same* v. *Smith,* 27 *Barb.* 104.)

The contents of the instruments are not sufficiently recited, in most instances, to determine whether in the *granting clause* the words more appropriate to a *grant,* or to a *demise,* are usually employed. I have referred to this clause in *some* of the earlier Van Rensselaer leases, and in them the words are "hath granted, bargained, sold, released and confirmed," and not the words more usual in leases, "hath demised, leased, and to farm let." And yet in some of them it is highly probable that the latter or some equivalent words were employed. Thus in *Van Rensselaer* v. *Snyder,* (6 *N. Y. Rep.* 300,) it is said that the plaintiff read in evidence a *lease* between Van Rensselaer and Decker, whereby the former *demised* and granted to the latter, *forever,* a certain lot, at an annual rent. In *Depeyster* v. *Michael,* (13 *N. Y. Rep.* 468, 469,) it is said the plaintiff introduced a *lease* from Van Rensselaer to Snyder, by which the former *leased* to the latter and to his heirs, &c. forever, a certain lot. Other provisions of the instrument are quoted *in haec verba,* describing the one party as the *lessor,* and the other as the *lessee.* The argument of the counsel for the plaintiff refers to the paper as a *lease,* (*p.* 470,) and in the opinion of the court it is spoken of as a *lease in fee,* and the parties as *lessor* and *lessee,* (*p.* 489.) In the statement of the four cases contained under the title of *Van Rensselaer* v. *Smith,* (27 *Barb.* 104,) they are all spoken of as *leases* or *demises,* and the parties as *lessor* and *lessee.* (*Pages* 104, 105, 106, 107, 110.)

This clause, however, in the instrument, is not alone decisive, and must be construed in connection with the other

portions of the conveyance. And these provisions are not entirely conclusive of the question. For while they grant to the party forever, apparently, the entire property and estate, there are material exceptions and reservations in favor of the grantor or lessor—a reservation of *rent,* and a *covenant* to *pay* the same, and clauses of distress and re-entry not unusual in conveyances between landlord and tenant, and not appropriate to conveyances in *fee simple absolute.* The adjudicated cases, also, while they are not, perhaps, precisely uniform on this question, must be regarded on the whole, I think, so far as this court is concerned, as holding that the relation of landlord and tenant is *created* or *recognized* by these instruments. The leading case of *Depeyster* v. *Michael,* (6 *N. Y. Rep.* 467,) holds that the conveyance is in *fee,* and of an estate in *fee simple,* and conveys the *whole estate* to the grantee or alienee, (*p.* 497,) and leaves no *estate, reversion,* or *possibility* of *reverter* in the grantor, (*p.* 506.) It is further held that the grantor in such an instrument, has no right of distress at the common law, to sustain which a reversion is necessary, (*Van Rensselaer* v. *Hays,* 19 *N. Y. Rep.* 76;) and, consequently, no *rent service,* but only a *rent charge,* or fee farm rent, which may be imposed upon an estate in fee. (6 *N. Y. Rep.* 497, 504, 505. *Van Rensselaer* v. *Hays,* 19 *id.* 76. *Same* v. *Snyder,* 13 *id.* 299. *Same* v. *Read,* 26 *id.* 564.)

Nevertheless, it is also firmly held that the sum of money which, by the terms of the conveyance, is to be *annually* or oftener paid by the grantee or covenantor, to the grantor or covenantee, is styled, and *properly* styled, rent, (*Van Rensselaer* v. *Ball,* 19 *N. Y. Rep.* 107;) and is properly denominated a *rent charge,* (6 *N. Y. Rep.* 497, 504; 19 *id.* 76, 77;) and is in the nature of an annual return or render for the land; or at all events, that the payments are payments of *rent,* and not of *purchase money,* (*Van Rensselaer* v. *Read,* 26 *N. Y. Rep.* 576;) and is a *lawful condition* imposed upon a conveyance *in fee,* (6 *N. Y. Rep.* 497, 504; 19 *id.* 76, 77;)

and obligatory upon the parties, in default of performance of which the defaulting party is subject to the consequences arising from the contract, or imposed by the terms of the instrument.

And while in the case of *Van Rensselaer* v. *Read,* (26 *N. Y. Rep.* 563,) it is said, " such conveyances *operate as assignments, and not as leases,* whatever name may be given to them, and leave neither any reversion nor possibility of reverter in the grantor," it is also said in the same case, at page 576, " If the relation of *landlord or tenant* between the parties was, as has been claimed, necessary to render covenants assignable, it would not be difficult to show *that relation exists in this case.*" And the learned judge argues in support of this last position, 1. That the *rent charge,* including the *right of entry,* though not a *reversion,* creates an *interest in the land.* 2. That the annual payments are payments of *rent,* and not payments of *purchase money.* 3. That the parties to these conveyances are styled, in many of the reported cases, *landlords and tenants.* 4. That the decisions in *some* of the cases, (*Van Rensselaer* v. *Snyder,* 13 *N. Y. Rep.* 299, and *Van Rensselaer* v. *Ball,* 19 *id.* 100,) can be sustained on *no other ground,* as they depended *entirely* upon a statute applicable only to parties holding *that relation.* (2 *R. S.* 850, § 30.) See also, the case of *Van Rensselaer* v. *Lansing,* (*MS. Sup. Court,* 3*d Dist. March,* 1865 ;) where this question, in several of its aspects, is largely discussed. Also *Tyler* v. *Sherman, and other cases,* (*Supreme Court,* 3*d Dist. March,* 1863 ;) also, *Overbagh* v. *Stanton,* (*Sup. Court,* 3*d Dist. Sept.* 1865.)

Moreover, it is held in the case of *Van Rensselaer* v. *Smith,* (27 *Barb.* 104,) and the other cases decided with it, that under our laws the relation of *landlord and tenant* is made to exist as between the grantor and grantee in a conveyance in fee of manor lands, reserving rents. Judge Gould, at pages 155 to 159, argues at length, and strongly in favor of this position, 1. From the statute of 1788, as amended in 1805,

and from the statute authorizing ejectment for non-payment of rent. (2 *R. S.* 505.) 2. From their being subject to those rents and services, incidents of the socage tenure, which carried with them at common law the relation of landlord and tenant. (*P.* 157.) 3. From this relation being held or recognized to exist in several reported cases in our own state. (*Van Rensselaer* v. *Snyder,* 3 *Kern.* 302. *Hunt* v. *Comstock,* 15 *Wend.* 665. *Depeyster* v. *Michael,* 2 *Seld.* 467.) Judge Wright, also, in an elaborate opinion, and in the same case, (pages 168 to 177,) argues with ability in favor of the same view of the case, giving strong reasons in support of that position.

These decisions, carefully made after mature deliberation, in our own court and in our own district — never so far as I know reversed, or even reviewed in an appellate tribunal — ought, perhaps, to terminate the discussion of these questions, in this court, until some principle at war with them is adjudicated in some superior tribunal.

II. The parties who are entitled to the benefits, and bound to the performance of this contract, are not simply those who executed the original conveyance, but all who have succeeded to their position, or who hold under them — whether as heirs, devisees or assigns of the original parties. It is held that the agreement was intended to be *perpetual ;* (*Van Rensselaer* v. *Hays,* 19 *N. Y. Rep.* 70, 71 ;) and to bind subsequent parties ; and that such parties are *expressly named* and therefore bound ; (*Van Rensselaer* v. *Read,* 26 *N. Y. Rep.* 565 ;) and that the covenants *run with the land,* being connected with the estate, and growing out of its enjoyment. (*Main* v. *Feathers,* 21 *Barb.* 646. *Van Rensselaer* v. *Bonesteel,* 24 *id.* 365. *Same* v. *Smith,* 27 *id.* 142 *to* 154, 171 *to* 176. *Same* v. *Read,* 26 *N. Y. Rep.* 565.) It is held that the parties succeeding to the title of the original grantor — the covenantee in regard to the rent — are entitled to enforce the covenant. (*Van Rensselaer* v. *Read,* 26 *N. Y. Rep.* 566, 567. *Demarest* v. *Willard,* 8 *Cowen,* 206. (1.) By virtue of the act of 1788 as

amended by the act of 1805, (*see* 1 *R. S.* 747 ; *Van Rensse-laer* v. *Hays*, 19 *N. Y. Rep.* 83 ;) and that these acts were constitutional, affecting only the remedy, (19 *N. Y. Rep.* 85 ;) and that independent of the act of 1805, (which has been re-pealed as applicable to grants made prior to 1805,) the *benefit* of the covenant runs to the assignee, (26 *N. Y. Rep.* 574,) being covered by the provisions of the Code of Procedure, (*Code*, §§ 111, 112. 26 *N. Y. Rep.* 579.) (2.) That it does not depend on the existence of *tenure*, (*Id.* 574; *Morse* v. *Aldrich*, 19 *Pick.* 454; *Trustees of Watertown* v. *Cowen*, 4 *Paige*, 510 ; *Hills* v. *Miller*, 3 *id.* 254; *Barrow* v. *Rich-ard*, 8 *id.* 351 ;) as is also instanced in covenants of war-ranty for quiet enjoyment, and against incumbrances, which *run with the land* though *no tenure exists.* (26 *N. Y. Rep.* 575.) (3.) That these covenants run not only with the *land* (proper) but with *incorporeal hereditaments.* (*Van Rens-selaer* v. *Read*, 26 *N. Y. Rep.* 576. *Platt on Covenants*, 441. *Norman* v. *Wells*, 17 *Wend.* 146.) (4.) That this rent, if not strictly an *estate in the land*, (*Payn* v. *Beal*, 4 *Denio*, 405,) is nevertheless a *hereditament*, and is descendible and in-heritable. (19 *N. Y. Rep.* 77.. *Nicoll* v. *N. Y. and Erie R. R. Co.*, 12 *id.* 131, 132. *Van Rensselaer* v. *Read*, 19 *id.* 564.) (5.) That in *several* cases the *rights* of the *assignee* have been enforced, not having been disputed. (*Watts* v. *Coffin*, 11 *John.* 495. *Van Rensselaer* v. *Bradley*, 3 *Denio*, 135. *Same* v. *Jones*, 5 *id.* 449.) (6.) That the actions which sustained *ejectment* for non-payment of rent, in favor of the *devisee* of the grantor, necessarily *affirmed* the construction which had been given to the act of 1805. (19 *N. Y. Rep.* 86. *See Jackson* v. *Collins*, 11 *John.* 1 ; *Van Rensselaer* v. *Jewett*, 5 *Denio*, 121 ; *Same* v. *Hayes*, *Id.* 477 ; *Same* v. *Snyder*, 13 *N. Y. Rep.* 299.) (7.) And that the question is not an open one, in this state, whether covenants for the payment of rents pass to the assignee of the rents without the aid of any reversion in the assignee. (*Van Rensselaer* v. *Read*, 26 *N. Y. Rep.* 577. *Demarest* v. *Willard*, 8 *Cowen*,

206. *Willard* v. *Tillman*, 19 *Wend.* 358 ; 2 *Hill*, 274. *Childs* v. *Clark*, 3 *Barb. Ch.* 52.) It is also held that the assignees of the grantee or. covenantor are liable on the covenant to pay rent, (19 *N. Y. Rep.* 90,) and that these covenants run with the land, as against the assignees of the covenantor ; (*Main* v. *Feathers*, 21 *Barb.* 646 ; *Van Rensselaer* v. *Bonesteel*, 24 *id.* 365 ; *Same* v. *Read*, 26 *N. Y. Rep.* 565 ; *Platt on Covenants*, 493, 494 ;) that this is also in accordance with the English decisions ; and that there is no solid reason for any distinction between the *assigns* of the *covenantor* and the *assigns* of the *covenantee*, in regard to the right or obligation of those covenants ; (*Van Rensselaer* v. *Hays*, 19 *N. Y. Rep.* 90 ;) that also as to the assigns of the covenantor, it does not depend on the existence of a reversion, and is within the provisions of the act of 1805, (19 *N. Y. Rep.* 91, 92,) and of the Code, (26 *id.* 579.) And further, that the courts have in various cases *assumed* and *recognized* the *liability* of the assignees — such liability not having been disputed. (*Watts* v. *Coffin*, 11 *John.* 495. *Lush* v. *Druse*, 4 *Wend.* 313. *Van Rensselaer* v. *Bradley*, 3 *Denio*, 135. *Same* v. *Jones*, 5 *id.* 449. *Same* v. *Gallup*, *Id.* 454. *Same* v. *Roberts*, *Id.* 470.)

III. The remedies which the grantor or lessor may pursue in the event of the non-payment of the rent, are :

1. *Covenant*, to recover the rent itself, either,

(1.) As between the original parties, or

(2.) As between parties who have succeeded to their rights.

2. *Ejectment* to recover the premises, for the non-payment of the rent.

1. The first remedy — that of a direct action to recover the rent itself by the party who is entitled to it, against the party from whom it is due — needs no remark, inasmuch as it is obviously a proper and natural remedy, and flows directly from the relation of the parties, as soon as that is legally ascertained. And it subsists as a matter of course by and against the *assignees* of the respective parties, when it is

conceded or demonstrated that such parties are liable upon the engagements of their predecessors.

2. The second remedy — that of *ejectment* — requires more consideration, and has been the subject of considerable adjudication. It is but a mode of enforcing the right of *re-entry;* and the authority to pursue it depends in part upon the provisions of the contract, and in part upon the provisions of the common and statute law. It is founded upon that provision of the contract which gives the party the right to re-enter the premises in the event of the non-payment of the rent, and usually, also, in the event of the want of a sufficient distress on the premises to satisfy the rent; and where a right of re-entry for non-payment of rent is not reserved, the landlord can not maintain ejectment for non-payment of rent. (*DeLancey* v. *Ganong,* 9 *N. Y. Rep.* 9. *S. C.* 12 *Barb.* 120.)

This condition is held to be a *lawful* condition, and the breach of it gives a right to re-enter; and a reversion is not necessary to uphold it. (19 *N. Y. Rep.* 102.) It has been supposed that at common law only the *grantor* and his *heirs* could avail themselves of this right to re-enter. (*Nicoll* v. *N. Y. and Erie R. R. Co.,* 12 *N. Y. Rep.* 121. 4 *Kent's Com.* 127. 19 *N. Y. Rep.* 103.) But the right is conferred upon the *assignees,* by the act of 1805, and the act is constitutional. (*Van Rensselaer* v. *Ball,* 19 *N. Y. Rep.* 104 *to* 106.) The right is also held to be conferred or recognized by the act abolishing distress for rent, (*Laws of* 1846, *ch.* 274,) and it is held that this latter act confers the same rights upon the assignee as were conferred by the act of 1805, before its partial repeal by the act of 1860. (*Van Rensselaer* v. *Slingerland,* 26 *N. Y. Rep.* 586.) And it is held that the question is the same as if the suit were by the original grantee. (*Ibid*)

Where ejectment was brought for the non-payment of rent, and the proceedings were according to the common law, it was held that a *strict demand* of the rent, made with all the

niceties required by the common law, was essential. (*Van Rensselaer* v. *Jewett,* 2 *N. Y. Rep.* 144, 148. *Same* v. *Ball,* 19 *id.* 106 ;) although it has also been held that this strict demand could be dispensed with if the plaintiff could show that there was no sufficient distress on the premises. (*Van Rensselaer* v. *Ball,* 19 *N. Y. Rep.* 108. *Jackson* v. *Collins,* 11 *John.* 1. *Van Rensselaer* v. *Jewett,* 5 *Denio,* 121. *Same* v. *Hays, Id.* 477. *Same* v. *Jewett,* 2 *N. Y. Rep.* 141. *Same* v. *Snyder,* 13 *id.* 299.) It is further held that a *demand* of the rent according to the course of the common law is rendered unnecessary under the provisions of the Revised Statutes, (2 *R. S.* 505, § 1,) whenever a half year's rent or more is due and no sufficient distress can be found on the premises, and the landlord has a subsisting right by law to re-enter for the non-payment of the rent ; the commencement of the suit being authorized to operate as a substitute for a demand of the rent and an actual re-entry. (*Van Rensselaer* v. *Slingerland,* 26 *N. Y. Rep.* 587.) And the provisions of this statute are held to be applicable as well to grants or leases *in fee* reserving rent, as to leases for *life* or for *years.* (*Van Rensselaer* v. *Snyder,* 13 *N. Y. Rep.* 299. *Same* v. *Ball,* 19 *id.* 107, 108. *Same* v. *Slingerland,* 26 *id.* 587.)

It is further held that the service of the *notice* under the 3d section of the act of 1846, renders *unnecessary* the proof of the want of any sufficient distress. (*Van Rensselaer* v. *Slingerland,* 26 *N. Y. Rep.* 586.)

It has been contended that the condition of re-entry only operates by *putting an end to the estate,* and can not *give an estate* to a *stranger* to the title. But it has been *held* that this is no answer, even at *common law,* (26 *N. Y. Rep.* 587 ;) and that in *Jemmot* v. *Cooley,* (1 *Saund.* 112,) it was held that the grantee of a rent charge in fee *without interest* in the land beyond that given him by the *grant,* could maintain ejectment after default in the payment of the *rent.* (*Van Rensselaer* v. *Slingerland,* 26 *N. Y. Rep.* 587.)

To entitle the party to bring ejectment, no previous *actual*

*entry* on the premises is necessary ; a *right* to *enter* for condition broken, and to *immediate possession,* being all that is necessary. (2 *R. S.* 304, § 6 ; 306, § 25 ; 505, § 30. *Taylor's Landlord and Tenant,* 332. *Roscoe on Real Actions,* 497. *Gardner* v. *Keteltas,* 3 *Hill,* 332. *Coe* v. *Clay,* 5 *Bing.* 440. *Trull* v. *Granger,* 8 *N. Y. Rep.* 118. *Van Rensselaer* v. *Slingerland,* 26 *id.* 587.) It is fair, therefore, to infer that any *estate or interest* in the premises other than such as is derived from a forfeiture arising from condition broken, and the right of entry or immediate possession consequent thereon, conferred by the terms of the contract, is unnecessary to support ejectment.

This closes the references to the course of adjudication had in regard to the manor leases ; and as these decisions are obligatory upon us, it would seem they ought to foreclose further debate upon questions precisely similar.

The questions made in the present case, by the defendant, are the following :

1. That the obligations sought to be enforced depend for their validity upon the right to bind *assignees* or derivative parties by the contracts of their predecessors or the original contracting parties ; and that, as applicable to estates in fee, they are rents or services which could not be attached to them under the "act concerning tenures," passed in 1787. (1 *R. L.* 70, §§ 1, 6.)

2. That if otherwise obligatory, they ceased to exist upon the adoption of the *amendment to the federal constitution,* abolishing slavery and involuntary servitude within the United States.

3. That the *lapse of time,* and the non-payment of rent during such lapse of time, furnish conclusive evidence of the extinguishment or discharge of the contract.

4. That the actions are barred by the *statute of limitations.*

These questions, except the first, are perhaps open to discussion, except so far as the third and fourth have been

Tyler *v.* Heidorn.

disposed of by the unreported case of *Spalding* v. *Dibble,* recently decided in this court.

The first question, I think, is settled by the cases to which reference has been heretofore made. In them the effect of the provisions of the act concerning tenures has been largely discussed, and the rents and services reserved and stipulated by the instruments in question held not to be inconsistent with the abolition of feudal tenures, or with the independent and allodial tenure under the state itself, which the statute in question is supposed to have effected. (*See Van Rensselaer* v. *Smith,* 27 *Barb.* 104; *Same* v. *Hays,* 19 *N. Y. Rep.* 68; *Same* v. *Ball, Id.* 100; *Same* v. *Read,* 26 *id.* 558; *Same* v. *Slingerland, Id.* 580.)

The obligation of the contract is further disputed upon the ground that it is essentially a *personal servitude,* and abolished by the late amendment to the federal constitution, whereby it is provided that "neither slavery nor involuntary servitude, except as a punishment for crimes, whereof the party shall have been duly convicted, shall exist within the United States or any place subject to their jurisdiction."

1. It may be well to consider the consequences of such a doctrine; for though, if the rule be plain, such consequences should not deter us from enforcing it, yet they may very properly be considered in determining what was the intent and object of the provision.

If the doctrine contended for be well founded, it sweeps away *all* contracts, so far as respects their *obligation* upon all persons except the original parties thereto. So far as I can discover, no parties can ever be bound by the contracts of others, although they may enjoy the property, in regard to which the contract is made. All covenants running with the land; all obligations of heirs and devisees, so far as they rest upon the contract of the ancestor; indeed, all contracts of whatever nature, by which certain burdens are attempted to be imposed upon persons who act in a representative capacity, by reason of certain benefits which they enjoy from the

possession and ownership of property derived from others, are obliterated at once: An annual rent, designed to be perpetual and to be obligatory upon successive owners of land, although it may form the entire consideration of the transfer or alienation of the property, becomes extinct upon the death of the first proprietor.

I apprehend consequences so sweeping and destructive could not have been intended or anticipated by the authors or approvers of this amendment to the constitution.

2. Nor is such, in my opinion, its fair scope and interpretation. It was designed for one specific object, and no other, to wit, the abolition of personal slavery within the United States, the system of personal and involuntary servitude, by which one person owned as property and could absolutely control the person and services of another. This was the mischief to be remedied — the evil to be abolished — the end to be gained. It was to give personal liberty to the enslaved, emancipation to those who were held in bondage. No other object was ever suggested, in the multitudinous discussions to which the project gave rise. No other would probably have commanded the approval of the country. To give it now a more sweeping effect, so as not only to liberate every slave, but to destroy every contract which imposed upon one person the obligations contracted by another, upon the ground that it was in effect a personal servitude, would be doing violence, I think, to the intent of the law makers and the general understanding of the people. The term *involuntary servitude*, in my opinion, is substantially synonymous with *slavery*, though it may perhaps be regarded as slightly more comprehensive, and as embracing every thing under the name of *servitude*, though not denominated slavery, which gives to one person the control and ownership of the involuntary and compulsory *services* of another against his will and consent.

3. The amendment in question was never intended to, and in my opinion does not, embrace *contract* service of any

Tyler *v.* Heidorn.

description, or such as flows from contracts made by a party, or grows out of a *contract* made by another person in regard to property and connected with its enjoyment, which property such party derives from such other person and personally enjoys. Such service is never *involuntary*. The party may at any time renounce it. It is connected with the enjoyment of property, and by refusing to accept or to enjoy the property, the party may at all times escape the personal servitude. These contracts are always either voluntarily entered into by the party himself, or else they embrace a subject, or property, by relinquishing which the party always relieves himself from the obligation attached to it. It was well and forcibly said, I think, by the learned judge who delivered the opinion in *Van Rensselaer* v. *Bonesteel*, (27 *Barb.* 369,) "When the defendant took his title to the land, he took it charged with the burden which the original grantee had thus inseparably annexed to it. By taking the *benefit* of the grant he *voluntarily* assumed the liabilities of the original grantee, in respect to the subject of the grant." The servitude, therefore, (if it be such,) was not *involuntary*.

It is further urged that the *lapse* of time, and the *non-payment of rent*, furnish conclusive evidence that the obligation, if it ever existed, was released and discharged.

In *Livingston* v. *Livingston*, (4 *John. Ch.* 294,) cited by the defendant, which was a bill for *discovery* and relief—to discover whether the instrument charging the rent was not in the possession of the defendant, and whether the rent was not charged upon the land in possession of the defendant—and for an account of the rent, &c. the chancellor dismissed the bill on these grounds, that no rent had been paid or demanded for forty-four years, (the bill charged that none had been paid since the *date of the lease;*) that the case was distinguished by the fact that no rent had ever been paid, or demanded, from the beginning; that the presumption was very strong of an extinguishment of the rent by some grant or conveyance; that the original grantor lived seventeen years

after the execution of the deed, without rent paid or demanded; that his son lived four years, and his grandson twenty years, also, without such demand or payment; that his representatives *could not find the deed;* that under such circumstances the presumption was that it was surrendered or canceled and the rent extinguished; that the decision of Sir Orlando Bridgman was applicable and just, who, in *Palmer* v. *Whettenhall,* (1 *Cases in Chancery,* 184,) allowed a demurrer to such a bill, after thirty years. (4 *John. Ch.* 298, 299.)

In *Collet* v. *Jaques,* (1 *Cases in Chancery,* 120,) payment of the rent was decreed,. though the bill alleged that the deeds charging the rent were lost; it appearing that the rent had been paid until the last twelve years.

In *Boteler* v. *Massey,* (*Rep. Temp. Finch,* 241,) the court supported a claim for a dormant rent, on a bill founded on the loss of the counterpart of the deed, where it appeared that the rent had been paid until within twenty-three years.

In *Livingston* v. *Livingston,* (4 *John. Ch.* 287,) which was also a bill filed to obtain an account of rents and to discover the title by which the defendants held the lands, the defendants objected, among other things, "that the rent is to be presumed paid and satisfied, by the lapse of time." But the chancellor overruled the objection, and said, "The last objection is of no force. How can the lapse of time be brought in as presumptive evidence of payment when the defendant in his answer admits the original covenant to pay, and does not pretend to any payment? Time operates in equity only by way of evidence, and here is only, as to one deed, twenty years and a few months, between the date of the covenant and the filing of the bill, and it is short of twenty years in the other cases." And the chancellor directed a reference to take an account of the rents.

In *Jackson* v. *Davis,* (5 *Cowen,* 130,) the court held that satisfaction of the rent might possibly be presumed after a forbearance of twenty years unexplained; that where a mortgagee has never entered into possession, and no demand

Tyler *v.* Heidorn.

or payment of principal or interest has been made in twenty years, it has always been held sufficient to warrant the presumption that the mortgage has been satisfied; (*Bull. N. P.* 110; 3 *John.* 386; 7 *id.* 283; 12 *id.* 242; 1 *Phil. Ev.* 119, *note a;*) that there is a material distinction between the presumption of the payment of money and the execution of a release or the extinguishment of a *right* to rent, which can only be by deed; that where the relation of landlord and tenant is once established, under a sealed lease, the mere circumstance that the landlord has not demanded the rent can not justify the presumption that he has extinguished his right to it by a conveyance of the interest in remainder or reversion to his tenant; that the presumption is not a presumption of law which can not be contradicted, but a presumption in the nature of evidence, and mere length of time will never aid such presumption; it must arise from some facts or circumstances which took place within that time. (5 *Cowen,* 130, 131.)

In *Cole* v. *Patterson,* (25 *Wend,* 456, 458,) it was held that the non-payment of rent for a period of from twenty to twenty-four years does not *necessarily* raise the presumption of payment, and is not sufficient to justify the presumption of payment where circumstances exist tending to excuse the delay in demanding the rent; nor, under such circumstances, will a release or conveyance extinguishing the rent be presumed.

In *Failing* v. *Schenck,* (3 *Hill,* 345, 346,) "there was no evidence that any rent had been paid on the thirty year lease," and more than thirty years had elapsed before the bringing of the suit. And Judge Cowen said, (p. 346,) "I am inclined to think that, under the circumstances, had the question been material, the case might have been a proper one for saying that the rent due on the lease executed by Nicholas Failing must be presumed to have been extinguished—had an action been brought for that; at least the question of extinguishment might have been proper for the jury."

There are other cases which might be referred to, some of which are contained in 2 *Abbott's Dig.* 616 *to* 620, §§ 217 *to* 267; 3 *id.* 732, §§ 209 *to* 225; 1 *Cowen & Hill's Notes,* *p.* 324 *et seq.*; 358, *note* 308; but none seem so directly applicable as the foregoing, and they lead to the suggestion that there does not appear to be any absolute and unqualified rule that the mere lapse of time will furnish conclusive evidence of payment; but that it is, after all, a presumption of fact, to be determined by the court and jury upon a consideration of all the evidence and all the facts and circumstances bearing upon it.

In the present case, the case contains the statement (fol. 69,) "that there was in arrear and unpaid all the rent provided for, from the date of the contract, (1794 to 1864,) *there being no evidence of any payments.*"

If this was merely intended to state that there was no proof of any payment of rent, it was perhaps unobjectionable; but if it was intended to state that there *was* proof that it was *not paid*, it seems to be unwarranted by the case, which purports to contain *all the evidence given on the trial,* which not only does not contain the evidence of any such fact, but shows the existence of an instrument providing for a perpetual annual rent, the title to all arrears of which that may have accrued after the death of Stephen Van Rensselaer came to the plaintiff on or about the 28th day of March, 1861. Moreover, among the facts found by the referee in his report incorporated in the judgment record, it is stated that at the time of the demand the annual rent reserved which had accrued during several years, was in arrear and unpaid. We are also to consider that the course of proof which the plaintiff was called upon to pursue did not naturally direct the mind to the necessity of any attention to, or proof of, payment of rent, or non-payment of rent, except for the particular year when his demand was made, and on which his action was based. Taking these circumstances into consideration, to wit, the supposed absence of

Tyler *v.* Heidorn.

any necessity for proof on the part of the plaintiff as to the payment or non-payment of rent, except for the year 1862 ; the conceded existence of an instrument providing for the payment of a perpetual rent, obligatory upon the parties to the suit ; the possession and production of this instrument by the plaintiff ; the absence of any positive proof of non-payment, or of any facts and circumstances leading to a presumption of the extinguishment of the rent ; the careful transmission to the plaintiff of all the rights and interest which Van Rensselaer had to the property and the rents subsequent to the execution of the instrument, I do not think we ought to indulge the presumption that the rent was extinguished, or discharged, or paid.

It is further said the action was barred by the statute of limitations. The argument is founded upon that section of the Code which requires the plaintiff, his ancestor, predecessor or grantor to have been seised or possessed of the premises in question within twenty years before the commencement of the action, as a condition precedent to the maintenance of an action for the recovery of real property, or for the recovery of the possession thereof. (*Code*, §§ 78, 79.)

This question was decided adversely to the defendant in the unreported case of *Spalding* v. *Dibble*, (*MS. Sup. Court, 3d dist. decided in December*, 1865.) It was there held, that if the section of the Code above referred to embraced a case like the present, it refers to *such* a seisin or possession as will carry with it the title to the premises, or a right of entry which will authorize an action of ejectment ; that of such a seisin or possession, title or interest, the plaintiff has always been possessed, culminating in a right of entry or immediate possession whenever a breach of the condition on which the premises were held took place ; that if the seisin is not constant and uninterrupted during the holding of the defendant and his predecessors under the title of the plaintiff and his predecessors, it *attaches* upon failure to perform the condition. Section 81 of the Code, providing that the person

establishing a legal title to the premises shall be presumed to have been possessed thereof within the time required by law, and the occupation by another shall be deemed to be in subordination to the true title, unless it appear that there has been an adverse possession of twenty years, is, I am inclined to think, as properly applicable to this case, as are sections 78 and 79 ; for if the plaintiff or his predecessors must have had title within twenty years, then such a title or interest as the plaintiff has shown is sufficient, as is to be inferred from the cases already cited. (2 *R. S.* 304, § 6 ; 306, § 25 ; 505, § 30. *Van Rensselaer* v. *Slingerland,* 26 *N. Y. Rep.* 587. *Same* v. *Ball,* 19 *id.* 100. *Gardner* v. *Keteltas,* 3 *Hill,* 332. *Trull* v. *Granger,* 8 *N. Y. Rep.* 118.) And if he has established such legal title to the premises, the possession is presumed to be in *subordination* to that title, by section 81. But it is said there is in that section a saving of the rights of those who have held adversely for twenty years, and that the defendant's possession is of that character. And the cases of *The People* v. *Van Rensselaer,* (9 *N. Y. Rep.* 344,) and *The People* v. *Trinity Church,* (22 *id.* 44, 56,) are cited to show that the possession of a tenant or grantee under a lease or grant in fee is *adverse* to that of the grantor or lessor. This, in my opinion, is only *partially* true. As to the *interest conveyed,* it is undoubtedly a holding or possession on the part of the grantee *adverse* to the *continuance* of *that* title or interest in the grantor. As to the *interest reserved,* as for example the *reversion* in a lease for life or years, or the *rents and interests* dependent upon the covenants and conditions in a grant or lease in fee, it is not, on the part of the tenant or grantee, *adverse* to the grantor, but *perfectly consistent* with his title. *Both* parties claim under the same title and the same instrument ; both *recognise and admit* it ; and the *possession of both,* though *adverse* to *each other* as to the *diverse* interests which they respectively claim, in distinction from or hostility to each other, is otherwise and especially as to each recognizing and admitting

Tyler *v.* Heidorn.

the title of the other and occupying in accordance with such recognition and admission, perfectly *harmonious and consistent*. When, therefore, Judge Denio, in *The People* v. *Van Rensselaer*, (9 *N. Y. Rep.* 342,) held that the people were barred by the statute of limitations, he did so upon an entirely different and distinct principle from that we are now considering; and the distinction is well stated by him. He says, at page 342, "It is true the people have in one sense received the rents and profits. They have received the quit rents, but the statute of 1788 requires that they should be received 'by force and virtue of such right and title;' that is, the right and title asserted in the action which is sought to be barred. The title by which the quit rents were received by the government was the *reservation in the patent,* which admitted the right to the general profits to be in the patentees. The title sought to be established by the action is *not the title to the rents*, but the general and absolute title to the land, *in hostility to all rights under the patent."* And Judge Comstock, in *The People* v. *Trinity Church*, (22 *N. Y. Rep.* 56,) while holding in general terms the doctrine, *as applied to that case*, that the defendants' possession was *adverse* to the plaintiffs, recognizes the same distinction above alluded to. He says: "It is hardly necessary to observe that this case in no manner involves the right of the plaintiffs to the *nominal quit rent reserved in the grant* of which we are speaking. The claim is to recover possession of the land *in opposition to that grant*, and to all other pretenses of title on the part of the defendants." It is this very *distinction* which distinguishes the present case from those cited. Here the plaintiff claims under the *very instrument* under which the defendant defends — the plaintiff founding his claim on the *non-payment of the rent*, which, for the purposes of this argument, the defendant must assume that he is *bound to pay*. These several claims are consistent and harmonious, not adverse and hostile, and together forming the one entire and perfect estate which is termed *a fee simple*

*absolute.* Were the plaintiff to seek to recover under a *different* title, "in hostility to all rights under the patent," (or grant,) the defendant could set up adverse possession. But when his claim is founded upon "the reservation (of rent) in the patent," (or grant,) then, as the defendant claims under precisely the same title and instrument, his possession can not be adverse.

It was further held or suggested in the case of *Spalding* v. *Dibble,* that section 86 was applicable, which made the possession of the tenant the possession of the landlord whenever the relation of landlord and tenant shall exist; and it was at least intimated that the principle of that section was applicable to the present case. The references to former adjudications by which we are bound tend, I think, to show that such relation, in effect, exists between parties situated like those in the present case. (*Van Rensselaer* v. *Read,* 26 *N. Y. Rep.* 576. *Same* v. *Ball,* 19 *id.* 100. *Same* v. *Snyder,* 13 *id.* 599. *Same* v. *Smith,* 27 *Barb.* 104.)

It is said, indeed, that the referee has found in this case, as a question of fact, "that the relations of landlord and tenant were not created by the contract, and do not exist between the parties to this action." The question is one of *law,* and not one of *fact,* on the facts proved and undisputed, and can not be made to assume a different aspect by being included in the findings of fact.

It is not amiss to look at the consequences of the doctrine maintained by the defendants. The enforcement of forfeitures on estates upon condition subsequent is at an end; for if the breach of the condition is held to vest no title or seisin in the covenantee or his assigns, estates upon condition become in effect absolute and unconditional, and the breach of the condition can never be enforced in an action of ejectment. This is at war with all our well settled notions upon this subject, as well as with the decisions before noted.

It further appears from the findings of fact, "that the plaintiff had, when the action was commenced, no estate or

interest in the premises." This also, I think, was designed by the referee either as a conclusion of law or as an inference from other facts found and stated in immediate connection with this; because if it was intended to say that the plaintiff had no *such* estate or interest as would support an action of ejectment, it is contradicted by the other facts proved and found by the referee, on the existence of which the action is based, and which in law justified it, according to the decisions and according to the referee's own conclusions, for he found for the plaintiff. I think, therefore, we may accept this explanation of the facts, and in this way make the report consistent with itself. Perhaps the fact, if taken to be true, as broadly as the referee states it, would not be in the way of the maintenance of the action; for, as already appears from the quoted decisions, an estate or interest in the premises, other than such as is identical with or flows from a right of possession, is not indispensable to the maintenance of the action.

This disposes of all the questions raised in the case, and the result is that the judgment must be *affirmed*.

Judgment affirmed.

[ALBANY GENERAL TERM, March 5, 1866. *Miller*, *Ingalls* and *Hogeboom*, Justices.]